YOUNG HARP *v.* THE STATE.

(*Nashville.* December Term, 1928.)

Opinion filed, March 16, 1929.

O. K. Holladay and C. J. Cullom, for plaintiff in error.

Nat Tipton, Assistant Attorney-General, and Worth Bryant, for the State.

Mr. Justice Cook delivered the opinion of the Court.

Plaintiff in error appealed from a conviction for violating the age of consent on Lillian Buck, a girl sixteen years of age.

On October 25, 1927, the girl was suspected by her father and mother, and when accused admitted acts of intercourse, whereupon the father sent for plaintiff in error, who came to his residence. When threatened with prosecution, plaintiff in error agreed to marry the girl, and the ceremony was performed at Cookeville on the night of October 25. He abandoned her the Sunday morning immediately following the marriage ceremony. The father complained at the January term, and indictment was returned and the trial followed in which the girl testified concerning her relations with plaintiff in error, and upon her testimony and corroborating facts and

circumstances, the jury returned a verdict of guilty, assessing the maximum punishment at three years imprisonment.

It is insisted on behalf of plaintiff in error that the judgment should be reversed because the evidence does not sustain the verdict, for error in the charge to the jury and because the trial judge admitted in evidence the testimony of Lillian Buck. It is urged (1) that she was not a competent witness against her husband; (2) she could not be heard to testify concerning the facts acquired in the confidences established by the engagement to marry or touching communications after the marriage; (3) and could not be properly allowed to disclose acts of fornication done under the promise to marry occurring after the engagement and before marriage.

By the common law, neither the husband nor the wife could testify for or against the other in criminal cases. Subject to a very few exceptions, the rule excluding their testimony was absolute. In *Norman* v. *State,* 127 Tenn., 340, the court held that though married after the prosecution was set on foot for violating the age of consent upon her, the wife could not be heard to testify as a witness to sustain the indictment. This case arose and was disposed of before the statute of 1915, and conformed to the then existing rule of the common law. 28 R. C. L., 486.

*(1)* In 1915 chapter 161 was enacted. It provides: ''That hereafter in all criminal cases in the State, the husband or the wife shall be a competent witness to testify for or against each other.''

After the passage of this Act, admissibility of the wife's testimony in a criminal case was involved in *McCormick* v. *State,* 135 Tenn., 218. The court held that

while the Act made the husband and wife competent witnesses for or against each other in criminal cases, it did not abrogate the common-law rule against their disclosure of confidential and privileged communications. The rule is wiser than they who repeat it. It reaches beyond temporary expedients and detached situations that might seem to require its destruction; it relates to the home and invites a free exchange of confidences that establish unity in that integral part of the great social structure called the State. The inter-relations are too immense to be handled with platitudes, so we pass it.

Since chapter 161, Acts of 1915, the rule does not extend beyond the exclusion of information acquired in consequence of the marital relation, and cannot therefore be applied to transactions and intimacies occurring before marriage.

It is insisted, using the statement of the court in *Norman* v. *State*, 355, that: "If the wife be held incompetent to testify in such cases, marriage will undoubtedly with more frequency follow the illicit relation, and thus, perhaps in many cases, both mother and child be saved the shame and degradation which inevitably follows a successful prosecution of the husband and father."

Quoting from that case, it is also insisted that: "No public policy is sound which, in the name of public justice, invades the home and takes therefrom the wife as a witness against the husband or the husband against the wife, and by means of the evidence of one, consigns the other to the gallows, the penitentiary, or the jail. An increased number of convictions might result from such a policy, but at a cost which the public could ill afford. The home is the sanctuary of our civilization, and the in-

creased number of convictions would not compensate for the homes destroyed.''

These observations may be just. ''Law and order,'' ''social welfare,'' ''respect for law,'' ''law enforcement,'' may not always be best promoted by pursuing with vindicative spirit those human beings who become involved in their own frail and erotic impulses. But if there is fault, it comes from the rigidity of the statute, section 6456 of Shannon's Code, under which the female victim may be exposed to all of the defenses and incidents of an ''age of consent case'' and when sometimes a youthful and unsophisticated male may be condemned to penal servitude. Whether the human frailties that produce such conduct can be cured by statute, we cannot say. The lawmaking power has so written, and the policy is binding on the courts.

In *McCormick* v. *State, supra,* the Act of 1915 is interpreted as excluding confidential and privileged communications received by either the husband or the wife by reason of the marital relation. The facts disclosed by the testimony of Lillian Buck were not communicated under cover of the marital relation, and do not fall within the exception of privileged matter under the rule announced in the McCormick case. She testified to no inculpatory facts coming to her knowledge after the marriage; but disclosed acts of intercourse with the defendant within the period from September 1 to October 21, 1927, prior to the marriage, and such testimony was made admissible by chapter 161, Acts of 1915.

When her intercourse was revealed to the father and mother, plaintiff in error, under threats of prosecution, married the girl, but remained with her only three days. She was a school girl sixteen years of age, apparently

giddy and susceptible. Her testimony disclosing the intercourse is sufficiently corroborated by evidence fairly tending to sustain it, notwithstanding the denial of plaintiff in error.

(2) In addition to the denial, plaintiff in error presents the defense that the girl was at the time and before a lewd, bawd or kept female. He testified that the girl admitted to him on Saturday night before he abandoned her that she had engaged in an act of intercourse with Vetros Phy, a married man who worked on her father's farm, and gave that as his reason for leaving her. To support that contention, he introduced Ed Wellman, who testified that on a certain occasion while he was at or near her father's barn he observed Phy put his hand around the girl's waist and saw them walk into the barn together. This circumstance is contradicted by Phy, by the girl, by her mother and father, and the girl denied that she made the alleged admission.

It was also attempted to draw an inference of illicit conduct between the girl and Quilla Walker from a circumstance attending her gift of an apple to Walker, but beyond that there are no facts disclosing improper conduct between them.

Other trivial circumstances in the record are drawn upon to establish the defense that the girl was lewd. Viewed in their proper light, they indicate no more than giddiness and indiscretion.

(3) The issues were sharply drawn and the jurors had before them the conflicting facts. It was their province to consider the evidence and reach a conclusion, and they approached the conclusion as the conclusive judges of the credibility of the witnesses and the weight of evidence, and they rejected the theory of the defense and adopted that of the State.

After a careful review of all the facts, we cannot conclude that the jury reached an erroneous verdict.

*(4)* The strictures on the charge of the trial judge are without merit. After reading the testimony of the mother of Lillian Buck, we cannot conclude that the trial judge, in submitting the theory of the State, committed any error. If he did, it was harmless error. Mrs. Buck's testimony, as we read it, was susceptible to the interpretation given it by the trial judge. In one of her statements she emphatically says that she observed her daughter's soiled garments Thursday morning. The marriage did not occur until Thursday night. There was a conflict of proof as to whether or not the girl called the plaintiff in error much or little over the telephone. Undoubtedly there was association between them. It consisted of at least three meetings between them. Letters in the record show frequent letter-writing, therefore it does not seem that the trial judge deprived the defense of the benefit of any material evidence or in any way interfered with the theory of the defense.

There was a controversy dependent on testimony of plaintiff in error on the one hand and the father, mother and Lillian Buck on the other as to the character of threats that induced the marriage. Plaintiff in error says the father threatened to kill him or have him killed if he did not marry his daughter. The father, mother and daughter say that Ridley Buck gave plaintiff in error the option between marriage and a criminal prosecution.

The testimony of the sheriff was offered by the defense to show that Vetros Phy came to him on the night of the marriage and stated that Ridley Buck wanted him, the sheriff, to come to his house as quickly as possible, that Young Harp and Mr. Buck's girl had some trouble and

that Harp was at the house and was going to marry the girl that night or be killed. Buck admits that he sent for the sheriff but says he did so for the purpose of having plaintiff in error arrested if he did not marry the girl. Any statement volunteered by Phy would not have been competent and was properly excluded by the trial judge.

We find no prejudicial error in the record and are constrained to affirm the judgment of the trial court.