DILLON v. CARTER et al.—74 S. W. (2d) 391.

Western Section.   November 25, 1933.

Petition for Certiorari denied by Supreme Court, May 19, 1934.

Sam Taubenblatt and Chas. L. Neely, both of Memphis, for plaintiff in error.

Emmett W. Braden and Charles G. Morgan, both of Memphis, for defendants in error.

SENTER, J. The parties will be referred to as in the court below, Edith Dillon, by next friend, plaintiff, and Mrs. H. H. Carter and Kenneth Hodgkin, defendants.

This is a suit by plaintiff for personal injuries sustained by her in an accident occurring on Union avenue in the city of Memphis, Tennessee. The declaration alleges in substance that while plaintiff was walking on the sidewalk on the south side of Union avenue she stepped from the curbing into Cox street, and then observed the motorcycle ridden by defendant Kenneth Hodgkin approaching the intersection of Union and Cox, on Union, and the automobile driven by the defendant Mrs. H. H. Carter, and stepped back onto the curbing of the sidewalk, when she was struck by the motorcycle which had collided with the automobile of Mrs. Carter, and received the very serious injuries sued for. In both counts of her declaration she avers that Mrs. Carter was driving the automobile at a reckless rate of speed and negligently started to turn into Cox avenue, and that the defendant Hodgkin was then in the act of passing the automobile driven by Mrs. Carter in a negligent way and manner, when the motorcycle was struck by the automobile and thrown against plaintiff. The second count of the declaration avers that the automobile and the motorcycle were both being operated in violation of certain city ordinances, which ordinances were specially pleaded.

The defendant Mrs. H. H. Carter filed pleas to the declaration,

but the defendant Hodgkin did not file any pleas and did not otherwise enter his appearance, and a judgment by fault was taken against him, and a writ of inquiry was directed for the ascertainment of the amount of damages to be awarded against him, and the cause proceeded to trial. At the conclusion of plaintiff's proof in chief, the defendant Mrs. Carter moved for a directed verdict in her favor, on the ground that there was no evidence offered by plaintiff which tended to show any negligence upon the part of Mrs. Carter, when considered in its most favorable aspect to the plaintiff. This motion for a directed verdict in favor of Mrs. Carter was sustained by the trial judge, and whereupon plaintiff took a voluntary nonsuit as to the defendant Kenneth Hodgkin. A motion for a new trial made by plaintiff in the case against Mrs. Carter was overruled and disallowed. From the action of the court in overruling and disallowing her motion for a new trial and in directing a verdict against her and in favor of Mrs. Carter, plaintiff prayed and was granted an appeal to this court in the nature of a writ of error, and the appeal has been duly perfected and errors assigned, as follows:

First, that the evidence showed that there was negligence on the part of the defendant Mrs. H. H. Carter, and that there was negligence in the method in which Mrs. Carter was driving the automobile at the time plaintiff was injured, and that this negligence on the part of defendant Mrs. Carter was the proximate cause of the injuries sustained by plaintiff.

It will thus be seen that the only question presented on this appeal is whether or not there was any material evidence offered by plaintiff that tended to prove any negligence upon the part of the defendant Mrs. H. H. Carter, resulting in the accident, when considered in its most favorable aspect to the case of plaintiff. It therefore becomes necessary that we briefly review the evidence.

Plaintiff testified that she was walking west on Union avenue and that, when she reached the curbing of Cox on Union, she noticed a motorcycle about 150 feet coming east on Union; that she did not see the automobile; that just as she got to the curbing there was a crash, the motorcycle and car had hit each other; that the car was in front of the motorcycle and that she saw it was going to hit her and she jumped back and was struck and was rendered unconscious; that she had only taken three steps into Cox, when she saw the motorcycle was going to hit her, and then stepped back onto the curb, where she was struck and injured.

The next witness for plaintiff was the defendant Kenneth Hodgkin. Hodgkin testified that he was riding a motorcycle going each on Union street. He had a girl friend on the back of the motorcycle riding with him. Another young man with a girl riding with him was on a motorcycle some half a block in front of Hodgkin. He testified in substance that he was riding the motorcycle at about

20 to 25 miles per hour, and that Mrs. Carter was driving the auto-mobile at about the same rate of speed, and was just in front of him. That his motorcycle was immediately to the rear of the right rear of the automobile as the automobile and the motorcycle approached Cox street intersection; that the automobile was about ten feet from the center line of Union avenue; that there is a line or mark down the center of Union avenue. On the question of the conduct of the driver of the automobile and his own actions he was asked and answered as follows:

"Q. When was the first time you saw Mrs. Carter's automobile? A. Right at Union and Cooper.

"Q. Where were you, in relation to that automobile, at that time? Where were you on your motorcycle? A. Well, I was just a little behind it, on the right hand side of it.

"Q. You mean, a little behind it, the rear wheel? A. Yes, sir.

"Q. Were you crossing Union? A. I was going down Union.

"Q. You were going down Union and she came off Cooper onto Union? A. I think she came off Cooper. I am not sure. I don't remember exactly.

"Q. How far did you drive along there with that automobile? A. I drove along all the way from the corner.

"Q. Up to Cox street, you mean? A. Just about.

"Q. Where was the automobile being driven with reference to the center line of Union Street? A. Well, I would say it was about ten feet from the center line.

"Q. About ten feet from the center line, and you were over from that toward the curb? A. Yes, sir.

"Q. When you approached the intersection of Cox street and Union avenue just what did the lady in the automobile do? A. Well, I saw her stick out her hand, she sort of turned to the left a little bit like she was going to turn to the left, and I didn't pay any more attention to her. I was going on by, and the next thing I knew I was lying over in the street.

"The Court: You say as I caught your answer, that you saw the lady hold out her hand as she neared Cox street? A. Yes, sir.

"Q. (By the Court): You thought she was going to turn to the left, and paid no more attention to her and went on and undertook to go on by her? A. Yes, sir.

"Q. Do you know where with reference—you say she turned to the left? A. Yes, sir.

"Q. Do you know how far she did turn to the left? A. No, sir, I could not say how far she turned, but just from the way she did I thought she was going to turn to the left."

The witness also stated that he passed the automobile on the right-hand side; that he thought Mrs. Carter was going to turn to the left into Cox street, and that he speeded up the motorcycle to pass her

on the right-hand side, and she then turned the automobile to the right to enter into Cox street, and that the automobile collided with the rear wheel of his motorcycle.

On cross-examination this witness testified as follows:

"Q. I believe you said that you were on the right side of Mrs. Carter's car, were you? A. Yes, sir.

"Q. And she came up to South Cox, started to slow up, put out her hand, and you kind of speeded up to pass her and go on by at the intersection? A. Yes, sir."

Mr. Palfrey, the next witness for plaintiff, testified with reference to the collision as follows:

"Q. Where was that motorcycle traveling with reference to Mrs. Carter's automobile, and where was her automobile traveling with reference to the middle line of Union avenue? A. All three of us were going east; she was in a car, and there was a motorcycle with a girl riding behind the boy that was driving the motorcycle. I was about 40 or 50 feet behind her and the car—the motorcycle was on her right-hand side, in the back of it, in the back of her car, probably even with her rear wheel. His front wheel was even with her rear wheel.

"Q. How long had they been traveling that way, Mr. Palfrey? A. Why, I don't know that they traveled that way at all. That was just before they got into the intersection, if it is Cox. That is the way they were, that was their position just as they got to Cox. She was in the middle of the street.

"Q. In the middle of Union avenue? A. Almost near the middle. She was just a little to the right of Union avenue.

"Q. And what did she do? A. Well, I was behind, I thought she was going to turn north.

"Q. Did the car turn north? A. She swerved, and she headed a tiny bit as though she was going to make the turn north on Cox, and the motorcycle—may I go on and tell?

"Q. Yes. A. The motorcycle swerved around her, turned of course to her right; they were both traveling this way, and the motorcycle whipped around her. Well, of course I was going that way and I came around following the motorcycle and the motorcycle started to whip around and she hit the motorcycle, and threw the motorcycle up and hit, I think her name was Miss Dillon, who was walking west on Union, and it happened so quickly that—well, when I picked her up I realized that she had been down in the street. And I stopped my car and Mrs. Whatever her name is, had turned south on Cox and had gone probably 10 or 15 feet further south on Cox and stopped."

On cross-examination this witness was asked and answered as follows:

"Q. Mr. Palfrey, as I understand, Mrs. Carter's car was on

the south side of the center line of Union avenue? A. Yes, sir. She was probably, well, just about like the average person drives when there is no traffic in front of them.

"Q. And as you approached this intersection you say you saw her kind of go to make a right-hand turn? A. Yes, sir.

"Q. And as she was going to turn, or started to make that turn, you say the motorcycle was about that time about even with her rear fender? A. There was two motorcycles going out Union avenue, and I followed them all the way out, keeping behind them. And at the time that they about got to the intersection, his front wheel was about even with her right rear wheel.

"Q. And then when she made a right hand turn he was on the right hand side of her? A. That is right, exactly.

"Q. And when the car angled in, that is when the motorcycle and the car collided? A. When the accident occurred.

"Q. And then the motorcycle, as you say, ran on over this curb and struck this curb and hit Miss Dillon? A. That is so."

The next witness for plaintiff, Miss Smith, testified that she was riding on the motorcycle with Kenneth Hodgkin at the time of the accident. She testified that they were right behind the automobile, and just before they reached Cox street intersection with Union, that the automobile swerved slightly to the left and then turned to the right, while Hodgkin attempted to pass, and the motorcycle was struck by the automobile. On cross-examination this witness testified:

"Q. And you were on the right side of Mrs. Carter's car, closer to the curb than Mrs. Carter was, the south curb of Union? A. Well, I don't know. We were behind it.

"Q. And when you got up here you saw Mrs. Carter kind of pull her car out that way and make a right-hand turn? A. Yes, sir.

"Q. And Kenneth tried to go on by, and the motorcycle and the car hung up, and you went up in the yard? A. Yes, sir.

"Q. That is about all you know about it? A. Yes, sir."

These were the only witnesses who testified in behalf of plaintiff on the question of the accident. The other evidence offered by plaintiff was with reference to the nature and extent of the injuries.

From this evidence it appears that Mrs. Carter did not violate any city ordinance. She was driving at a rate of speed within the limit fixed by the ordinance. She was on the right-hand side of the center stripe on Union avenue. As she approached Cox street to turn south on Cox out of Union, she was driving within the rate of speed fixed by the ordinance, and had slowed the automobile down to make the turn as required by the ordinance. The only serious contention made by appellant is that Mrs. Carter, when she put her hand out, signaling that she intended to turn, first turned the car slightly to the north before turning to enter Cox street south. If there was any negligence whatever on the part of Mrs. Carter, it

was turning the car slightly to the north as she was starting to make the turn south into Cox street. It is for this reason that we have quoted the several witnesses as to the actual occurrence. It is evident that Hodgkin was driving the motorcycle about the rear right wheel of Mrs. Carter's automobile, and between the automobile and the south curb, or slightly so. Mrs. Carter was about ten feet south of the center line, going east on Union, when she put her hand out indicating to the traffic in the rear that she was turning into Cox street. Hodgkin testified that he at once speeded up his motorcycle in an effort to pass the automobile before it made the turn. He was attempting to pass the automobile on the right-hand side when he was struck by the automobile as it was making the turn into Cox street. In doing this, Hodgkin was clearly guilty of negligence. According to his own evidence, and all the evidence, Mrs. Carter only slightly turned to the left before turning to the right to give a little more clearance space. We do not think that this constituted any negligence on the part of Mrs. Carter. We think it clear from the evidence that the accident was the result of the negligence of Hodgkin, and that his negligence was the sole and proximate cause of the accident, resulting in the injuries to plaintiff.

Numerous cases have been cited by appellant in support of the contention made that the defendant Mrs. Carter was guilty of some negligence in slightly swerving her automobile to the north before starting to make the turn south into Cox street. Johnson v. Kinnan, 195 Iowa, 720, 192 N. W., 863; Piper v. Adams Express Co., 270 Pa., 54, 113 Atl., 563; Geiger v. Garrett, 270 Pa., 192, 113 Atl., 195; Wright v. Mitchell, 252 Pa., 325, 97 Atl., 478; Manceaux v. Hunter Canal Co., 148 La., 93, 86 So., 665. We have examined each of the cases above cited, and do not find that the facts of any of the cases are at all analogous to this case.

In the instant case it is shown that the defendant Mrs. Carter, who was in the car with some children, was driving the automobile at a very careful rate of speed as she proceeded out Union avenue, a much-traveled thoroughfare in the city of Memphis. She was driving on the right-hand side of the marked line, and about ten feet south of the center of Union. It is not shown that she could have seen the motorcycle which was trailing her and just to the rear of her right wheel, and between her right wheel and the curb. Her position in the automobile at the steering wheel placed her on the left-hand side of the front seat of the automobile. She certainly could not anticipate that one driving immediately behind her would attempt to pass near the street intersection, and to pass on the wrong side. She had a right to expect that other persons using the street, and to her rear, would observe the usual requirements of the road law, and especially in attempting to pass. She slowed her automobile down as she approached Cox street intersection, and

put her hand out of the car window as a signal to all traffic to her rear that she intended to make a turn into Cox street. It is not shown that there is any special signal to indicate whether she is turning to the north or to the south; the signal for making a turn is to put the hand out of the car window. When the driver does this all traffic to the rear, as well as to the front, is given due notice that the driver is intending to make a turn. If in order to make the turn to the south the car is turned slightly to the north at a slow rate of speed to better make the turn south, it should not deceive any driver driving to the rear. The direct, efficient, and proximate cause of a collision in such situation is the negligence of the person immediately trailing to attempt to pass an automobile on the wrong side, as was done in the instant case.

We are not unmindful of the rule that if there is any material evidence, however slight, upon which a jury verdict can be predicated, the question must be submitted to the jury. Or if the evidence presents facts about which reasonable minds could disagree, the case should be submitted to the jury. However, it is equally well settled that if the facts, when considered in the most favorable aspect to the plaintiff's case, show that the defendant was not guilty of any actionable negligence, the question is one of law and not a question of fact to be submitted to the jury. In such cases a motion for a directed verdict should be granted. Tyrus v. Railroad Co., 114 Tenn., 593, 86 S. W., 1074; Knoxville Traction Co. v. Brown, 115 Tenn., 329, 89 S. W., 319; Illinois Central R. Co. v. Beaver, 3 Tenn. App., 72. It is also well settled that the driver of an automobile has the right to expect that the driver of another car or vehicle in the rear will observe the road law in passing, and is not bound to anticipate negligence of those in charge of other vehicles, and in the absence of any circumstances which should reasonably put him on notice to the contrary, he has the right to assume, and to act on the assumption, that other users of the highway will exercise reasonable and ordinary care in the observance of road and traffic rules and regulations. Berry on Automobiles, p. 175; 3 Huddy on Automobiles (9 Ed.), sec. 180; 46 C. J., 884; Wilson v. Mullen, 11 Tenn. App., 327.

This court, in the case of Wilson v. Mullen, supra, on this subject, stated:

"The operator of a motor vehicle is not bound to anticipate negligence of those in charge of other vehicles; but in the absence of any circumstances which reasonably should put him on notice to the contrary, he has the right to assume and to act on the assumption, that other users of the highway will exercise reasonable and ordinary care and observe the rules of the road and traffic regulations."

The conclusion we reach is that the facts as disclosed by the record fail to show that the defendant Mrs. Carter was guilty of any

negligence, and that the accident, so far as she was concerned, was unavoidable. It results that the assignments of error are overruled, and the judgment of the lower court is affirmed.

Appellant and sureties on the appeal bond will pay the cost of this appeal.