JONES v. NOEL et al. (two cases).—204 S. W. (2d) 336.

Middle Section. March 29, 1947.

Petition for Certiorari denied by Supreme Court, August 1, 1947.

186

J. E. Travis, of Nashville, for plaintiffs in error.

Norman and Keefe, of Nashville, for defendants in error.

HICKERSON, J. J. B. Jones, Jr., an infant, brought this suit against Oscar F. Noel and Mrs. John H. Noel, doing business as partners under the firm name of Noel Hotel, to recover damages for personal injuries.

James Benton Jones, father of the minor, brought suit against the same defendants to recover his damage for loss of services and for expenses resulting from his son's injuries.

The declaration contains three counts. The first count is a common law count in which plaintiff alleged he was injured by the negligent operation of one of the elevators of defendants upon which plaintiff was riding as an employee of Noel Hotel.

He charged in his second count that defendants had employed him in violation of the Child Labor Laws of Tennessee and that his injuries resulted from such unlawful employment.

It was alleged in the third count that Noel Hotel operated the elevator on which plaintiff was injured in violation of an ordinance of the City of Nashville.

Defendants filed a demurrer and a special plea which were overruled and there was no appeal from this judgment of the circuit court. The cause was tried upon a plea of not guilty by judge and jury. Verdicts of $12,500 for the son and $1,500 for the father were returned by the jury, and judgments were entered accordingly. Defendants appealed in error to this court.

The first three assignments of error will be considered together. They present only one question: There is no

evidence to support the verdicts. Subsections two and three of assignment three cannot be considered by this court. They raise a question which is based upon the preponderance of the evidence.

 The trial court does not consider the preponderance of the evidence upon a motion for directed verdict; but whether there was any conflict in the evidence; or whether there was any material evidence to support a verdict. The jury and not the judge is the trier of the facts. The jury must weigh the evidence and determine where the preponderance lies. The judge has no constitutional right to invade that field. The same rule applies in this court upon an appeal in error where the case in the lower court was tried by judge and jury.

Plaintiff contends defendants violated Code Section 5316 when they employed him. The Code Section provides:

"Unlawful to employ children under sixteen in what work.—No child under the age of sixteen years shall be employed, permitted, or suffered to work at any of the following occupations or in any of the following positions: Repairing machine belts, while in motion, in any workshop or factory, or assisting therein in any capacity whatever; adjusting any belt to any machinery; oiling or cleaning machinery or assisting therein; operating or assisting in operating circular or band saws, wood shapers, wood jointers, planers, sandpaper or wood-polishing machinery; picker machines, machines used in picking wool, machines used in picking cotton, machines used in picking hair, machines used in picking any upholstering material; paperlacing machines, leather-burnishing machines in any tannery or leather manufactory; job or cylinder printing presses operated by power other than foot power, emery or polishing wheels used for polishing met-

al, wood-turning or boring machinery, stamping machines used in sheet metal and tinware manufacturing, stamping machines in washer and nut factories, corrugating rolls, such as are used in roofing and washboard factories; steam boilers, steam machinery or other steam generating apparatus, dough brakes or crockery machinery of any description; wire or iron straightening machinery, rolling mill machinery, punches or shears; washing, grinding, or mixing mills; calendar rolls in rubber manufacturing; laundering machinery; dipping, drying, or packing matches; or in mines or quarries.''

Plaintiff further contends that defendants violated Code Section 5317, which provides:

''Unlawful to employ children between 14 and 16 without employment certificate.—It shall be unlawful for any proprietor, foreman, owner, or other person to employ, permit, or suffer to work any child between the ages of fourteen and sixteen years in, about, or in connection with any place or establishment named in section 5314, unless said person keep on file and accessible to the shop and factory inspector an employment certificate . . .''

Code Section 5314 to which Code Section 5317 refers lists among the prohibited places of employment or occupation for minors ''any mill, factory, workshop . . .''

Plaintiff further charged that defendants violated the following ordinances of the City of Nashville in the operation of their elevator:

''Sec. 19(3) Every passenger elevator with more than one entrance to an exit from the car shall be provided with a sliding door on the inside of the car and each such entrance or exit, and each of such doors shall be securely closed before the elevator is put in motion.

. . . . . .

''Sec. 40. Elevators not to be started until doors shut.

—No person operating, controlling, managing or in charge of any passenger elevator, when the door has been opened for the reception of passengers, s'hall start such elevator, either up or down, until the door of the same has been closed and fastened, except sash-door as are equipped with automatic operating devices, and when so equipped such cars may be started when doors are within not more than six inches of being closed, and in the act of closing.'' Code of Nashville, Chapter 23.

There is evidence to support the following facts:

Plaintiff was employed by defendants to work as an ice boy at Noel Hotel. He was only fifteen years old. His duties were to go to t'he basement of the hotel and get ice and carry it to various parts of the hotel.

Defendants manufactured their own ice in the basement of Noel Hotel. Plaintiff was required to take blocks of ice weighing about one hundred twenty-five pounds and place them so they could be sawed into smaller blocks by circular saws. These saws were eight inches or ten inches in diameter and were operated by an electric motor. Plaintiff operated this machine for sawing the ice.

After the ice was sawed into these smaller particles, it was placed into a grinding machine which crushed it. Plaintiff operated this crushing or grinding machine. It was, also, run by electric motors.

After the ice had been prepared in this manner it was placed in a tub on a roller platform, pushed into an elevator, and carried to the places in the hotel where it was used. All of this work was done by plaintiff. He had only worked one week when he was injured.

Defendants did not have the certificate of employment required by Code Section 5317, which would have permitted them to employ and work plaintiff.

There were three elevators in the Noel Hotel. Two of them were located in the front of the lobby and were used primarily for the guests of the hotel. One was located near the rear of the lobby and was used primarily for freight and employees of the hotel. There were about one hundred fifty to one hundred seventy-five employees, and they were required to use the rear elevator.

The three elevators were constructed in the same manner, although the one at the rear was larger than the two at the front. As a safety device the three elevators had a lattice door inside the main shaft door which the operator was required to keep closed while the elevator was moving.

The elevator inspector of the City of Nashville classified these three elevators as passenger elevators and testified he had seen passengers use the rear elevator many times. It was used by guests of the hotel when the front elevators were out of order.

A negro girl, about seventeen years old, was operating the rear elevator on the day plaintiff was injured. He had prepared his ice and had rung for the elevator. When he rolled the ice on the elevator, part of it fell off of the tub in which it was carried to the floor of the elevator and plaintiff stooped to pick up this ice. The operator started the elevator without closing the safety door and plaintiff's foot was caught between the elevator floor and the wall of the shaft which was an opening of eight inches. He yelled for the operator to stop, but she carried the elevator about one and a half floors before she stopped it. The safety door on that elevator was out of order at that time and was wired so it could not be closed. The elevator had been operated for some time in this condition. The door was in proper order the next day after the accident.

■ There was abundant evidence to take this case to the jury on the common law count. We do not believe the minds of all reasonable men would say defendants exercised due care for the safety of this fifteen year old boy under the foregoing facts.

Under the statutory count, we are governed by the decisions of our Supreme Court construing the Child Labor Laws of Tennessee.

■ These statutes must be liberally construed to accomplish the purpose for which they were enacted. Chattanooga Implement Co. v. Harland, 146 Tenn. 85, 239 S. W. 421.

■ The violation of the Child Labor statutes makes the defendant liable for all injuries which result from the unlawful employment. Western Union Tel. Co. v. Ausbrooks, 148 Tenn. 615, 257 S. W. 858, 33 A. L. R. 330.

■ It is our opinion that there was sufficient evidence to go to the jury on the question of plaintiff's illegal employment. It would be a strained, unnatural construction of the statute to say that the place where ice was manufactured was not a mill, factory, or workshop; or to say that the sawing of the ice by circular saws and the crushing or grinding of it by the grinding machine, all of which was done by the use of electric motors, was not operating circular saws and "washing, grinding, or mixing mills."

As we construe the statute, plaintiff was illegally employed under the undisputed evidence in this case. When we are dealing with the safety and health and welfare of little children, we do not think the courts should quibble over words or attempt to draw nice distinctions. To the contrary, courts should take a practical, liberal view of the statute and give it that construction which will effect

its purpose. The trial court correctly took that view of this case.

As we understand the record, defendants did not take the position on the trial in the lower court that there was no evidence to be submitted to the jury on the question of the illegal employment of plaintiff. The second ground of defendants' motion for directed verdict was that:

"The preponderance of the proof shows that the defendant was operating a hotel and that the place where plaintiff, James B. Jones, Jr., was employed to work was neither a workshop nor a factory, and the machinery and equipment referred to does not bring the place to work within the scope and purview of Section 5314 and 5316 set out in Michie's Code, the same being Chapter 57 of the Acts of 1911."

Since there was a conflict in the evidence necessitating a determination of the "preponderance of the proof" a jury question was presented.

In connection with the third count of the declaration there is a direct conflict in the evidence in regard to the use of the elevator. Some witnesses said it was never used by guests; others that it was; others that it was so used when the front elevators were out of order; and all witnesses testified the employees of the hotel were required to use the rear elevator exclusively. Such conflicts in evidence make jury questions.

Wherefore, we hold there was evidence to take the case to the jury on all counts. The first three assignments are overruled.

The fourth assignment is that the court erred in charging the jury, as follows:

"The declaration in the third count alleges that there was in existence at that time a City Ordinance which I will read to you from the declaration. It is copied in

the declaration, and for your benefit I will repeat it in this charge. Chapter 23 of the Code of Nashville, Section 19, subsection 3, reads: (There is copied into this assignment the two sections of the code of Nashville which were quoted in the third count of the declaration. The assignment continues with the portion of the charge about which complaint is made).

"Then there is an exception that is not involved here. The declaration alleges that the defendants violated this City Ordinance, in that they failed to operate, that is, their servants failed to operate the elevator as required in the Ordinance, failed to have the door as required by the Ordinance in operation or use at the time. And that that violation, or those violations, was the direct and proximate cause of the plaintiff's injuries. I have, repeated to you, gentlemen, the substance of the declaration."

■ This assignment is overruled. The court was simply explaining the pleadings to the jury. The quoted portion of the charge had the effect of stating plaintiff's theory of the case as alleged in this part of the declaration. Explaining the pleadings to the jury, or stating the theories of the parties to the jury, by the trial court is not error. Harp v. State, 158 Tenn. 510, 14 S. W. (2d) 720.

■ The refusal of the trial court to charge the following special request is assigned as error:

"I further charge you, gentlemen of the jury, that if you find from a preponderance of the proof that the elevator involved in this accident was set apart and used by the defendant exclusively for the movement and transportation of freight and not for the guests of the Hotel, then I charge you that it would be as a matter of law a freight elevator insofar as its use in this accident is

concerned, regardless of what classification that the City Elevator Inspector placed upon it.

"I further charge you that the fact that the employees of the Hotel rode on this elevator occasionally and in the transportation of freight and merchandise would not make it a passenger elevator, and the requirements with reference to sliding doors, as set out in Count Three of the declaration would not apply to this elevator."

The assignment must be overruled. There is no factual basis for it. The elevator was not used "exclusively for the movement and transportation of freight;" nor was it used "occasionally" by the employees under the proof. As stated above, all employees of the hotel (one hundred fifty to one hundred seventy-five) were required to use this elevator at all times under defendants' theory of the case, and there was evidence that it was used by guests when the other elevators were out of order.

 The trial judge charged the jury:

"The plea of the defendant is not guilty. The legal effect of such plea is to deny each and every material allegation in the declaration, and to cast the burden of proof upon the plaintiff—I mean both plaintiffs, gentlemen—who must prove the case substantially as stated in the declaration by a preponderance of all the evidence, in the case before a recovery can be had.

. . . . . .

"The violation of a City Ordinance is negligence, and if such violation by the defendant was the proximate cause of plaintiff's injury then it is liable, providing the plaintiff was also at the time of the accident not guilty of some negligence which proximately caused or contributed to his own injury."

We think the charge, as given, was sufficient on this question.

By assignment six defendants complain that the court refused to charge another special request which we quote:

"I further charge you, gentlemen of the jury, that while the plaintiff, James B. Jones, Jr., was riding the freight elevator at the time of his accident and injury that said elevator was not a common carrier under the law, and the defendant did not owe the plaintiff the highest degree of care which must be exercised by common carriers, but owed him the duty only to furnish him a safe place to work according to the rule of Master and servant."

The special request was charged, in substance, in the main charge of the court, as follows:

"Negligence as applied to either the person injured or to the defendant in a case like this means the failure to exercise ordinary care, that is, such care as ordinarily prudent persons would exercise under circumstances similar to those shown by the evidence in this case.

"The court charges you that it was the duty of the operator of the elevator to use ordinary and reasonable care not to injure the plaintiff; that is, she should have used such care as an ordinarily prudent and careful person would use in the operation of an elevator. It was likewise the duty of the plaintiff, the boy, to use ordinary or reasonable care at the time for his own safety, and a failure on his part to do so would constitute negligence.

"The court charges you that it is the duty of the employer to furnish a reasonably safe place for his employee to perform his services,—a reasonably safe place to work; and his failure to furnish such a place, or such

a safe place, would be negligence; and if his failure to furnish a safe place to work in and around, in the carrying on of his duties was the direct and proximate cause of his injuries, the defendant would be liable, provided, that the plaintiff at the same time was not guilty of negligence which proximately caused or contributed to his own injury."

The sixth assignment is overruled.

■■■ By assignment seven defendants complain that the court sustained an objection to this question:

"Q. During the four years you were there, did you ever get anybody hurt on there?

"Mr. Keefe: I object to that.

"The Court: Sustained, that is plainly, Mr. Travis, that is not competent."

It was entirely possible for defendants to negligently operate this elevator for years and never have an accident; or to operate it safely before this accident, and never have an accident. But these facts would have no bearing upon the present issue. The question for the jury to decide was whether defendants negligently caused the accident in question. The trial judge properly sustained the objection about which complaint is made in this assignment.

■■■ Assignment eight is predicated upon the refusal of the trial court to allow defendants to prove that the Castner-Knott Dry Goods Company freight elevator was ridden only by employees. The specific question was (speaking of the freight elevator at Castner's):

"Who rides it?

"A. Nobody but the employees.

"Mr. Keefe: I object to that.

"The Court: Sustain the objection."

This question and answer were not relevant to the issues in the instant case. The fact that only employees ride the freight elevator at the Castner-Knott Dry Goods Company could have no bearing on the question of whether defendants negligently operated the elevator at the Noel Hotel when plaintiff was injured.

Only one question is left to determine: Were the verdicts excessive?

The rules which govern the amounts of verdicts in personal injury cases are so well settled that we see no need for stating them.

█ This fifteen year old child was horribly injured. The muscles and nerves of one leg were destroyed. His leg is practically useless. His nervous system was shocked. He cannot sleep. His suffering was intense. He is permanently injured. The jury gave him $12,500.00. It was small enough.

█ The father lost the services of his son for about six years. If he had no other damage, the $1,500.00 awarded him would not be excessive.

There is no insistence that the verdict of the jury was corrupt or dishonest. The trial judge was satisfied with it, and so are we.

The judgments of the circuit court are affirmed with the interest and all costs.

Felts and Howell, JJ., concur.