EDITH HAMPTON, Appellant, v. FLETCHER
PADGETT, Appellee.

ODIS HAMPTON, Appellant, v. FLETCHER
PADGETT, Appellee.—414 S.W.(2d) 12.

Eastern Section. January 18, 1967.

Certiorari Denied by Supreme Court April 3, 1967.

2

Tom Taylor, Athens, Charles C. Guinn, Etowah, for appellants.

Roberts, Weill & Ellis, Chattanooga, for appellee.

PURYEAR, J. In addition to referring to the parties by name we will also refer to them as they were designated in the trial Court, wherein appellants were plaintiffs and appellee was defendant.

The plaintiffs are husband and wife, and their suits, which were tried together, arose out of an automobile accident that occurred in the day time on March 24, 1965, north of the town of Etowah, Tennessee, on U.S. Highway 411 which is a two lane black topped highway running approximately north and south.

The plaintiffs were travelling northwardly in the husband's automobile, which was being driven by the husband, and the defendant was travelling southwardly, driving his own automobile.

At the time the collision occurred, plaintiffs were in the act of making a left turn into the private driveway of the residence of their son, James Hampton, which residence was located on the west side of such highway.

The wife sued for damages for personal injuries. The husband sued for damages for personal injuries, property damage, medical expenses and loss of services of the wife.

The declarations in both cases charge the defendant with common law negligence. To these declarations, the defendant filed a special plea in each case in which he denied that he was guilty of any negligence which proximately caused or contributed to the accident and also alleged that both plaintiffs were guilty of proximate contributory negligence, both common law and in violation of certain statutes set forth in the pleas. To these special pleas the plaintiffs filed replications joining issue thereon.

The cases were consolidated and tried together before the Circuit Judge and a jury, which trial resulted in a jury verdict in favor of the defendant in both cases.

The plaintiffs filed motions for new trial, which were overruled by the trial Judge, and appeal in error to this Court has been perfected in both cases.

Since the parties gave conflicting versions of the way and manner in which the accident occurred, we will give a brief summary of the testimony of each of the parties.

Mr. Hampton testified that he was driving his automobile northwardly on Highway 411 and that his wife was seated beside him; that as he approached the driveway to his son's house, located on his left side of the highway, he slowed down almost to a stop, turned on his left turn signal, at about which time another automobile, which was behind him and going in the same direction, passed him on the right; that he looked northwardly and saw that the highway was clear, then started to pull across to the left side of the highway for the purpose of turning into the driveway, at about which time his wife called his attention to the fact that the Padgett car was approaching from the opposite direction. He then looked up the highway in the direction from which the Padgett car was coming and saw it about five or six hundred feet away; that he thought he had plenty of time to make his turn, so he proceeded to turn left into his son's driveway and immediately after he entered the driveway, the Padgett car struck his car, thus damaging his car and injuring him and his wife.

Mrs. Hampton testified that as they approached their son's driveway her husband turned on his left turn signal, at about which time a car following them passed them

on the right; that she looked up the highway northwardly just as Mr. Hampton was about to make the turn, saw the Padgett car, whereupon she said "yonder comes a car over the viaduct", to which Mr. Hampton made some reply but she didn't recall what it was; that her husband immediately made the turn into the driveway and just as they entered the driveway and stopped behind another vehicle, which was parked there, the collision occurred.

On cross-examination Mrs. Hampton testified that her husband's car had come to a complete stop in the highway when she saw the Padgett car and warned of its approach.

Mr. Hampton testified that at the time he saw the Padgett car it was travelling at about 45 or 50 miles per hour.

It was established by other evidence that the legal speed limit at the point where the accident occurred was 50 miles per hour.

The defendant testified that he was driving his car southwardly and that just after he went over a viaduct, which is approximately 1100 feet north of the James Hampton driveway, he saw the Hampton car coming toward him in the northbound lane with the left turn signal blinking and at this time it was about 300 yards from him; that at about this time a truck passed the Hampton car on its right; that he, the defendant, was travelling at about 40 or 50 miles per hour at the time he saw the Hampton car, which he estimated to be travelling at about 30 miles per hour; that he took his foot off the accelerator when he saw the Hampton car, and then as he got within about 100 yards of this car, it turned in front of him and across his side of the highway; that as soon as he saw the plaintiffs were going to make their left

turn in front of him, he applied his brakes, but was unable to stop his car soon enough to avoid the collision and the cars actually collided on the highway in the southbound lane thereof, which was the lane in which the defendant was travelling.

The defendant expressly denied that he struck the Hampton car while it was in the driveway.

The parties themselves were the only eye witnesses to the accident. Although, at the time of the accident, the plaintiffs' son, James Hampton, was on his front porch talking to a man by the name of Gresham, neither he nor Gresham was looking toward the highway at the time of the collision and their attention was not attracted to it until they heard the noise of the collision itself.

State Trooper Waymon Deverrell arrived at the scene of the accident approximately thirty to thirty-five minutes after it occurred and in the course of his investigation at the scene he found debris, consisting of bits of glass and metal, in the southbound lane and also on the west shoulder of the highway, which indicated that the collision occurred somewhere at about that point.

Plaintiffs have filed two assignments of error, in the first of which they insist that the jury verdict is contrary to the weight and preponderance of the evidence.

We must overrule this assignment because it has been repeatedly held by the Appellate Courts of this State that such an assignment is not available to plaintiff-in-error in a civil case where a jury verdict has been approved by the trial Judge. Rogers v. Murfreesboro Housing Authority, 51 Tenn.App. 163, 365 S.W.2d 441; Jones v. Noel, 30 Tenn.App. 184, 204 S.W.2d 336; Atlantic Ice and Coal Co. v. Cameron, 19 Tenn.App. 675, 94 S.W.2d 72.

In their second assignment of error, plaintiffs insist there is no material evidence to support the verdict of the jury.

In effect, counsel for plaintiffs argues here that the trial Court could have very well directed a verdict in favor of Mrs. Hampton on the question of liability, since there is no evidence of contributory negligence on her part, although the record does not disclose that plaintiffs' counsel made any motion in the trial Court for such peremptory instruction.

In our opinion, it would have been reversible error for the trial Judge to direct such a verdict if motion therefor had been made, because there is material evidence in the record to support defendant's theory that he was not guilty of any negligence which proximately caused or contributed to the accident.

In considering this second assignment, we are bound by the rule that this Court will not disturb the verdict of a jury, approved by the trial Judge, if there is any material evidence to support it.

This rule makes it our duty to take the strongest legitimate view of all of the evidence to uphold the verdict, and to disregard all evidence and inferences to the contrary, and if the verdict is supported by any material evidence, it must be sustained. McAmis v. Carlisle, 42 Tenn.App. 195, 300 S.W.2d 59; Benson v. Fowler, 43 Tenn.App. 147, 306 S.W.2d 49; Callahan v. Town of Middleton, 41 Tenn. App. 21, 292 S.W.2d 501.

The defendant insists that he was entitled to assume, until the circumstances indicated otherwise, that the plaintiffs would allow him to pass them before making a left turn across his lane of travel into the private drive-

way in violation of Tennessee Code Annotated, Section 59-842, which provides as follows:

"59-842. *Turning movements.*—(a) No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in sec. 59-840, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner provided in secs. 59-843, 59-844 in the event any other traffic may be affected by such movement."

▆ It is a general rule of law that, in the absence of circumstances indicating otherwise, the operator of a motor vehicle has the right to assume, and to act on the assumption, that other users of the highway will obey the law and exercise due care. 60 C.J.S. Motor Vehicles sec. 249, p. 610; Dillon v. Carter, 18 Tenn.App. 176, 74 S.W.2d 391; McConnell v. Jones, 33 Tenn.App. 14, 228 S.W.2d 117; Inter-City Trucking Co. v. Daniels, 181 Tenn. 126, 178 S.W.2d 756.

▆ Since the above quoted code section provides that no person shall turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway *unless and until such movement can be made with reasonable safety,* the question of whether, under the facts and circumstances existing at the time of the accident in this case, plaintiffs could make a left turn into the private driveway with reasonable safety was an issue of fact.

Therefore, it was for the jury to decide in these cases whether the defendant was entitled to assume that the

plaintiff, Odis Hampton, would allow him to pass before making a left turn across defendant's lane of travel. We also think that. the particular point of time when the defendant was no longer entitled to indulge such an assumption was for the jury to decide.

These questions having been decided by the jury, in favor of defendant's theory of the case, and the verdict having been approved by the trial Judge, we are bound by it, since there is material evidence in the record to support defendant's theory and consequently, to support the jury's verdict.

The assignments of error are overruled and the judgment of the trial Court is affirmed with costs.

Shriver and Humphreys, JJ., concur.