NELL CROSS BROWN and husband, JAMES R. BROWN, Plaintiffs-Appellants, v. ALLRIGHT AUTO PARKS, INC., Defendant-Appellee. —456 S.W.2d 660.

Western Section. April 13, 1970.

Certiorari Denied by Supreme Court July 6, 1970.

544

Richard T. Ely, Memphis, for plaintiffs-appellants.

Robert M. Johnson, of Canada, Russell & Turner, Memphis, for defendant-appellee.

PURYEAR, J. This suit arose out of an accident in which the plaintiff, Mrs. Nell Cross Brown, sustained a broken arm. Both parties joined in one suit against the defendant, Mrs. Brown suing for damages for personal injury, and Mr. Brown suing for medical expenses and loss of services and consortium resulting from injury to Mrs. Brown.

The case was tried before the Circuit Judge and a jury on April 16th and 17th, 1969, and resulted in a jury verdict in favor of the defendant.

Plaintiffs filed a motion for new trial, which was overruled and this appeal resulted.

Since the case was tried and submitted to the Court and jury upon evidence introduced by the plaintiffs only, there is no controversy about the facts of the case which are, briefly, as follows:

The defendant operates a parking garage at the corner of Second and Gayoso Avenue in Memphis, Tennessee, and on the occasion in question, and for some time prior thereto, the plaintiff, Mrs. Brown, had been parking her automobile in said garage on a monthly basis.

On the 10th day of June, 1967, Mrs. Brown parked her automobile in said garage and when she returned at about 5:30 P.M. on the same day, the attendant who was assigned to the duty of delivering her automobile to her, reported that he was unable to find it, whereupon he inquired if she would like to help him locate it and she replied in the affirmative. It was later ascertained that the automobile had been stolen, but this fact is not relevant to the instant case.

The defendant's parking garage consists of at least three stories upon which automobiles are parked and the device by which attendants and other employees travel from one story to another in said building is known as a "man lift."

This man lift consists of a continuous belt that runs between the ground floor and the top floor both ways; photographs in the record show that this belt has attached to it, at intervals, steps which function as such, whether going up or coming down, and immediately above each step is a hand grip; the belt is supposed to travel at a speed of about seventy-eight feet per minute and alongside of same is a rope which may be pulled to stop it; this belt operates through a small hole in each floor and the employee riding the same may step off at the designated floor, usually while the belt is in motion.

A photograph filed as an exhibit shows a sign suspended near this device at the point where plaintiff says she stepped upon it which sign is printed in large legible type with the following words thereon: "DANGER. KEEP OFF. EMPLOYEES ONLY."

The way and manner in which the accident occurred was described by Mrs. Brown, in her testimony, as follows:

"A. I just asked for my car, because you don't have a ticket when you park by monthly basis, and I asked for my car and the boy nodded as if he would get it, and he kept bringing other cars down and bringing other cars down, and I asked him if he knew my car when he saw it, and he said he did, and I said, why don't you bring it down?

And he said, I can't find it. And he said, do you want to help me find it, and I said yes, and I said, how do you get up there, and he said take this lift or steps, or whatever it was, and I got on there, and I asked him how to get off, and he said when you see the floor, and I guess it would be on the second floor, and the floor was already there when he said get off when you see the floor, and so I stepped off, and I don't know how, I just fell.

Q. Do you know what floor that was?

A. It was the second floor.

Q. On the second floor, and you fell?

A. That's right.''

(B. of E. pp. 15-16)

As a result of this accident, the plaintiff sustained a broken arm and was hospitalized for several days.

Seven assignments of error have been filed and we will consider and discuss them separately.

The first assignment is to the effect that the verdict is contrary to the law applicable to the case and the second assignment is to the effect that the verdict is against the greater weight or preponderance of evidence.

The first assignment is so general and indefinite in its terms that it fails to specify wherein the verdict is contrary to the law and, therefore, does not comply with Rule 12(2) of this Court. Hunter v. Sheppard (1947), 187 Tenn. 99, 213 S.W.2d 19; State ex rel. Melton v. Nolan (1930), 161 Tenn. 293, 30 S.W.2d 601; Record v. Chickasaw Cooperage Co. (1902), 108 Tenn. 657, 69 S.W. 334.

548

■ The second assignment presents no question which this Court can consider since the verdict of the jury was approved by the trial Judge and therefore, we cannot weigh the evidence for the purpose of determining which way it preponderates. Hampton v. Padgett (1967), 57 Tenn.App. 1, 414 S.W.2d 12; Jones v. Noel (1947), 30 Tenn.App. 184, 204 S.W.2d 336; Nashville, C. & St. L. Ry. v. Harrell (1937), 21 Tenn.App. 353, 110 S.W.2d 1032; Barnes v. Scott (1950), 35 Tenn.App. 135, 243 S.W.2d 133; Memphis Casting Works v. Bearing and Transmission Company (1951), 35 Tenn.App. 164, 243 S.W.2d 145.

Therefore, the first and second assignments are respectfully overruled.

In the third assignment, plaintiffs assail the action of the trial Court in refusing to permit an expert witness to express his opinion as to whether or not the defendant breached its duty to plaintiffs by failing to take certain precautions or install certain safety devices to prevent the occurrence of such an accident as that in question here.

The testimony which the plaintiffs insist the trial Court erroneously excluded consists of a portion of the testimony of a structural engineer, one John C. Brough, Jr.

In order that the plaintiffs could have an opportunity to place the proffered testimony in the record, the jury was excused and Mr. Brough testified that the 1968 building code of the City of Memphis provided for fencing and gates around man lifts such as that involved in this case and further provided for specific location of a sign warning persons using the man lift.

■ However, according to this witness's testimony, this building code requiring such fences, gates and signs

did not become effective until January 1, 1968, and therefore, the provisions of such building code were not in effect at the time the accident occurred on June 10, 1967.

This proffered testimony was properly excluded by the trial Judge and the third assignment of error is respectfully overruled.

In the fourth assignment, plaintiffs assail the action of the trial Court in stating, in the presence of the jury, that the standard of care required of a common carrier was not applicable under the facts of this case.

The remarks of the trial judge which the plaintiffs assail in this assignment of error, appear in the bill of exceptions and we find nothing improper about such remarks.

On the other hand, we think such remarks by the trial Judge were a correct statement of the law applicable to the case and were entirely proper. We will discuss this proposition in more detail in considering the seventh assignment of error.

The fourth assignment is respectfully overruled.

In the fifth assignment, plaintiffs insist that the trial Judge erroneously refused to give the jury a requested instruction as follows:

"LAW RELATIVE TO ABSENT WITNESS—Lady and gentlemen of the jury, if it is developed from the testimony that there are available witnesses or witness who have within his peculiar knowledge material and pertinent facts concerning the matters under investigation who are under the control of or the relations of those witnesses or that witness which one of the parties

are such that they would naturally favor that party, and that party fails to call them without a reasonable explanation of their failure to do so, the jury may be warranted in inferring that his testimony would be unfavorable to the party failing to call the witness."

There is no evidence in the record to show that the defendant failed to call any available witness whose testimony would have been relevant to the case.

Apparently, the requested instruction was aimed at the defendant's failure to call as a witness the garage attendant who allegedly told plaintiff that he was unable to find her automobile and said that she might help him find it if she desired to do so.

The defendant did not introduce any evidence at all and rested its case on plaintiffs' proof, but there is no evidence that this garage attendant (whose name does not appear anywhere in the record) was available as a witness and therefore, it was not error for the trial Court to refuse such requested instruction.

It has been held that it does not constitute reversible error for the trial Court to refuse to charge a special request, which even though it contains a correct statement of law in the abstract, is not applicable to the evidence. Methodist Hospital v. Ball (1961), 50 Tenn.App. 460, 362 S.W.2d 475; Oliver v. Robert Moore & Co. (1873), 59 Tenn. 482.

The fifth assignment is respectfully overruled.

In their sixth assignment, plaintiffs assail the action of the trial Court in refusing to give the following requested instruction:

"Lady and gentlemen of the jury, the Court charges you that the man-lift, which is involved in this case, is a dangerous instrumentality, so far as the uninstructed are concerned, and if you find that the plaintiff Nell Cross Brown was in fact uninstructed; that she did not know or could she reasonably have been expected to know under the facts of this case of the danger to which she was subjecting herself, and if you further find that defendant's agent invited her to use the man-lift or, in the alternative, that said agent took no actions to stop the use of the man-lift by said plaintiff amounting to an implied invitation; then, in that event, you must find for the plaintiffs. However, if you find that the plaintiff knew or should have known that the man-lift was a dangerous instrumentality, but in spite thereof, undertook to use the same and you further find that she was not invited by defendant's agent to use the manlift and/or that said agent took action to stop her use of the man-lift, then, in such event, you shall find for the defendant."

This requested instruction is not a completely accurate statement of the law, because it disregards the issues of contributory negligence and proximate cause.

■ However, if these two elements of the law applicable to the case had been included in the instruction, it would not have been error for the trial Judge to refuse it, because his general charge includes all correct statements of the law included in this special request. In his general charge, the trial Judge told the jury that the defendant conceded the man lift is a dangerous instrumentality, and when read in its entirety, the general charge was adequate, covered all issues in the case and was not misleading in any respect.

In Harvey v. Wheeler (1967), 57 Tenn.App. 642, 423 S.W.2d 283, this Court said that when the charge of the Court, when read in its entirety, is adequate, covers the issues in the case, and is not misleading in any material respect, it is not prejudicial error for the trial Judge to refuse a special request which is substantially included in the general charge. Many other cases, including Jones v. Noel, supra, and Jack M. Bass & Co. v. Parker, infra, hold to the same effect.

The sixth assignment of error is respectfully overruled.

In their seventh assignment, the plaintiffs assail the action of the trial Court in refusing to give the following instruction:

"DUTY OF COMMON CARRIER—With reference to the duty of care owed by the defendant Allright Auto Parks, Inc. to the plaintiffs in this case, the law is this:

The defendant Allright Auto Parks, Inc. owed to the plaintiff Nell Cross Brown as a passenger on its man-lift, a type of elevator, the duty to exercise the highest practical degree of care for the safety of the passenger. That does not mean, lady and gentlemen, that the defendant is an insurer of the safety of one of its passengers. If that were the case, it would only be necessary for the plaintiff, in order to recover from the defendant to show that plaintiff was a passenger, and while a passenger she was injured. But that is not the law. The defendant Allright Auto Parks, Inc. is not an insurer, but the defendant is under the duty of exercising the highest practical degree of care, under the circumstances, for the safety of its passengers. That means, lady and gentlemen of the jury, taking into consideration all of the facts and circumstances sur-

rounding the defendant, the kind of vehicle the .defendant was operating, the kind of business that the defendant is engaged in, the kind of situs upon which the defendant was then and there operating its man-lift, the condition of the premises, the speed of the man-lift, the control the defendant's agent had over it, the manner in which the defendant's agent was operating, or failing to properly operate, the man-lift under the circumstances. Take into consideration all of those things and say whether or not the defendant, through its agent employee measured up to the highest practical degree of care of one under those circumstances. If the defendant parking garage company measured up to that degree of care, then it would not be guilty of negligence. If said defendant fell below that standard, then it would be guilty of negligence.''

In support of this assignment, plaintiffs cite Jack M. Bass & Co. v. Parker (1960), 208 Tenn. 38, 343 S.W.2d 879; Southern Building & Loan Association v. Lawson (1896), 97 Tenn. 367, 37 S.W. 86; T.C.A. Section 53-2601; 29 C.J.S. p. 1202 and Black's Law Dictionary definition of the word ''elevator.''

However, an examination of these authorities fails to disclose that any of them support plaintiffs' contention that the defendant was exercising the function of common carrier.

In Vol. 13 Am.Jur.2d pages 560, 561, a common carrier is defined as follows:

''A common carrier may be defined very generally, as one who holds himself out to the public as engaged in the business of transporting persons or property from place to place, for compensation, offering his services

to the public generally. The dominant and controlling factor in determining the status of one as a common carrier is his public profession or holding out, by words or by a course of conduct, as to the service offered or performed, with the result that he may be held liable for refusal, if there is no valid excuse, to carry for all who apply." 13 Am.Jur.2d pp. 560, 561, Carriers, Section 2.

In Nashville & C. Railroad Company v. Messino (1853), 33 Tenn. 220, our Supreme Court defined a common carrier of passengers as follows:

"A common carrier of passengers is one, who undertakes for hire to carry all persons indifferently who may apply for passage." (Supra, p. 225)

██ We are of the opinion that the well recognized definition of a common carrier cannot by any means, be stretched to include the defendant, under the facts and circumstances of this case, and therefore it was not error for the trial Court to refuse this requested instruction.

The seventh assignment of error is respectfully overruled.

All of the assignments of error having been considered and overruled, the judgment of the trial Court is affirmed and the plaintiffs-appellants will pay the costs of this appeal.

Carney, P. J. (W.S.), and Matherne, Jr., concur.