## BESSIE HOWELL v. SLOAN MESSENGER CO.

Western Section.    August 5, 1927.

No petition for Certiorari was filed.

**1. Carriers.  Common carriers of goods defined.**
    The distinctive characteristic of a common carrier is that he undertakes to carry for all people indifferently, and in order to impress upon one the character, and impose upon him the liabilities his conduct must amount

to a public offer to carry for all who tender him such goods as he is accustomed to carry.

2. **Carriers. Messenger company held to be a common carrier.**

Where a company maintained a messenger service and kept boys to deliver packages and messages and they held themselves out to the public to serve, for hire, any and every one who applied for their services held to be common carriers.

3. **Carriers. A common carrier is not liable for the loss of money or currency unless it holds itself out generally to carry such articles.**

The liability of a carrier as a common carrier for the loss of money or currency delivered to it for transportation, depends on whether or not it has held itself out generally to carry such articles.

4. **Carriers. Evidence. There is no presumption that an ordinary carrier is a carrier of money.**

There is no presumption that an ordinary carrier assumes to act as a carrier of money or currency and the assumption of that status must be proved by the party alleging it. No contract of a carrier to transport money as a common carrier can be implied from the fact that the carrier has held itself out as a common carrier of goods, wares, and merchandise generally.

5. **Carriers. Evidence. Evidence held to show that messenger company was not a common carrier of money and currency.**

In an action to recover from a messenger company for money lost because of the robbery of one of its messengers where the evidence showed that neither the company nor the boy who was sent to run the errand knew that the package given him contained money and there was no evidence to show that the company ever carried money, held that the company could not be considered a common carrier of money and therefore was not liable for the unavoidable loss.

6. **Appeal and error. Where there is a general verdict the bill of exceptions must affirmatively show that it contains all of the evidence before the verdict will be molested.**

It is a well settled rule of practice in Tennessee that where there has been a general verdict or findings, the bill of exceptions must affirmatively show, or it must appear from the nature of the case, that all the evidence submitted to the jury or the court below material with reference to the questions to be raised in the reviewing court is stated in the bill, or the court will presume that there was evidence to authorize and sustain the verdict of the jury or the findings of the court, and the judgment thereon.

7. **Appeal and error. Statements of "plaintiff rests" and "defendant rests" are not sufficient to show that the bill of exceptions contains all of the evidence.**

In an action where the only statement in the bill of exceptions at the close of the evidence was the statement of "plaintiff rests" and "defendant rests" held that such statements are not the equivalent of a statement that it was all the proof or evidence heard or introduced in the trial.

Appeal in Error from Circuit Court, Shelby County; Hon. M. R. Patterson, Judge.

Affirmed.

Clarence Friedman, of Memphis, for plaintiff in error.

Jesse Edgington, of Memphis, for defendant in error.

SENTER, J. This is an appeal from the judgment of the lower court dismissing plaintiff's suit, and taxing her with the costs.

Bessie Howell, the plaintiff, telephoned the defendant, Sloan Messenger Company, to send her a boy, a messenger boy, that she desired him to run an errand for her. In response to this telephone request for . messenger service, the defendant Sloan Messenger Company, which operates a general messenger service in the City of Memphis, sent one of its messenger boys to the rooming house of plaintiff, and plaintiff handed to the messenger boy a sealed envelope, without disclosing to the messenger boy the contents of the package, but directed him to take it to the First National Bank. As the messenger boy was on his way from plaintiff's rooming house to the bank to deliver the package, he was. jerked into an alley by a man and the package forcibly taken from him. He at once returned to the rooming house of plaintiff and told her that he had been robbed of the package and the circumstances pertaining to the package being forcibly taken from him. Whereupon, plaintiff telephoned to the Sloan Messenger Company that the messenger boy had been robbed of the package which she had given him to deliver to the First National Bank, and that the package contained $90 in money and two bank books. Immediately upon being informed that the messenger boy had been robbed, Mr. Sloan, the manager of the Sloan Messenger Company, went to the rooming house of plaintiff to make an investigation and was then told by plaintiff for the first time that the package contained $90 in money and bank pass books. Mr. Sloan employed the services of detectives, and the police of Memphis in an effort to discover the thief, and to get the money. His efforts were unsuccessful. Some time later plaintiff demanded of the defendant that he make good to her the money lost. The defendant denied liability. It also appears from the evidence of plaintiff that shortly after the messenger boy returned to her place and informed her that he had been robbed of the package, some person with a man's voice, called her on the telephone, and told her that he was satisfied that he had gotten even with her. She did not recognize the voice of the person talking.

It appears that the messenger boy, who was entrusted with this package for delivery to the bank, had been in the employ of the defendant for a year or more; that his character was good, and that he had always been careful and cautious.

At the time plaintiff telephoned to defendant to send a messenger boy to run an errand for her, she did not tell Mr. Sloan, of the messenger company, the nature of the errand, or that she desired to send money to the bank by the messenger. She gave him no notice of the nature of the errand. At the time she delivered the package to the messenger boy, she did not tell the messenger boy that the package contained money, or anything of value. It appears that the messenger boy went directly from the house of plain-

tiff, in a direct route, toward the bank, and was pulled into the alley and robbed while he was enroute to the bank by the usual and direct route.

Upon this evidence the trial judge, sitting without the intervention of a jury, held that the defendant was not liable for the loss of the money, and dismissed plaintiff's suit at the cost of plaintiff. The assignments of error filed by plaintiff contend that the Sloan Messenger Company is a common carrier, and was then engaged as a common carrier for hire in furnishing this messenger service to plaintiff, and that as a common carrier for hire, the messenger company would be liable for the loss of the property, and would only be excused from liability where the loss is the result of the act of God or the public enemy; that under this rule the trial judge was in error in denying plaintiff a judgment for the amount of the loss, and in dismissing her suit at her cost; it being further insisted by the assignments of error that the court applied the rule applicable to a bailee, when the rule applicable to a common carrier should have been applied.

We think it clear that if the relation existing between plaintiff and the defendant with reference to this transaction was simply that of bailor and bailee for hire, in that situation of the parties, plaintiff could not recover under the evidence in this case, since it is clear that defendant used ordinary care, and that degree of care required of it. The case would then come within the rule that the bailee is not an insurer, but is chargeable with reasonable care and diligence.

This brings us to a consideration of the question as to whether the defendant, in its operation of the mesenger service and business in which it was engaged, was a common carrier, and if so should the measure of responsibility be that of a common carrier so as to bring this case within the rule that for the loss or property entrusted to it to be handled as a common carrier, the carrier would only be excused by the act of God or the public enemy.

Under the general definition of a common carrier of goods, it is said in 10 C. J., sec. 9, page 39, ''one who undertakes for hire or reward to transport the goods of such as choose to employ him from place to place.'' It is further said in sec. 10, page 41: ''A common carrier is one that holds itself out as ready to engage in the transportation of goods for hire, as a public employment, and not as a casual occupation.'' In order to constitute one a common carrier of commodities, it is necessary that such person to be charged must be so engaged in the business of carrying or transporting commodities, that it does so promiscuously and indiscriminately, and holds itself out to serve the general public, indiscriminately, in rendering the service. In this State it has been held

that a common carrier is defined to be one who undertakes for hire, to transport the goods of such as choose to employ him, from place to place. (Moss v. Bettis, 4 Heisk., 666). In Vol. 4, R. C. L., 546, it is said: "The distinctive characteristic of a common carrier is that he undertakes to carry for all people indifferently, and in order to impress upon one the character, and impose upon him the liabilities, his conduct must amount to a public offer to carry for all who tender him such goods as he is accustomed to carry." We think this is an excellent statement of the rule, and a clear definition of a common carrier.

Applying these general rules and definitions to the facts of this case, we must reach the conclusion that the defendant in the conduct of the business in which it was engaged, was a common carrier. Mr. Sloan, the manager and operator of the business of Sloan Messenger Company, states that, "they delivered packages and messages for anyone who applied to them for their services, and that they received payment for such service; that he had been delivering packages for Miss Howell for a good many years." He also stated that he delivers packages for merchants who sent the packages to his office, and he makes a record of same before a delivery.

However, the further question is presented, as to whether the defendant held itself out as a common carrier for the purpose of handling and transporting money. The only evidence in the record as to the nature of the business of the defendant is the evidence of Mr. Sloan, who it seems conducts the business under the name and style of the "Sloan Messenger Company," and his evidence on that subject is as above quoted, and constitutes all the evidence in the record as to the nature of the business. There is not any evidence in the record that it was a part of his business to receive money from customers by messenger boys to be taken to banks for deposit. It is true that the plaintiff testifies that she had on other occasions used this same messenger boy for errands, and that he had made numerous trips to the bank for her, and had gone to the bank for her on numerous occasions, but she does not say that she had ever sent any money to the bank by the messenger boy, or that the defendant, or the messenger boy in his employ, and who ran the errands for plaintiff, ever had any knowledge or notice that money was being sent to the bank by him. We think it is well settled that unless it appears that it was a part of the business of the defendant to accept money or other valuables to be delivered to a bank for deposit, there is no presumption that that character of service is within the scope of service that he holds himself out to furnish to customers. In 10 C. J., page 42, sec. 12, it is said: "The liability of a carrier as a common carrier for

the loss of money or currency delivered to it for transportation, depends on whether or not it has held itself out generally to carry such articles. There is no presumption that an ordinary carrier assumes to act as a carrier of money or currency and the assumption of that status must be proved by the party alleging it. No contract of a carrier to transport money as a common carrier can be implied from the fact that the carrier has held itself out as a common carrier of goods, wares, and merchandise generally, nor does the transportation by the carrier of money for an express company, under a special contract have that effect. Nevertheless a carrier may be a common carrier of money as well as of goods, or, expressing this proposition in other terms, a carrier may render itself liable as a common carrier of money by holding itself out to the public as such.'' By the same authority it is stated that a general custom or usage on the part of the carrier as to the acceptance and transportation of money, currency, and like valuables, may impose upon it the liability of a common carrier.

From the evidence in this case the plaintiff, at the time she telephoned the office of defendant for a messenger, informed the defendant that she wanted a messenger to run an errand. She did not state the nature of the errand, nor did she give any intimation that she wanted to use the messenger to deliver this amount of money, or any other amount of money to the bank. When the messenger boy arrived in response to her call, she handed to him a sealed envelope, which she now claims contained $90 in currency and two pass books. She states that she had sealed the package before the messenger boy arrived, and simply handed him the package with direction that he take it to the bank, without at any time telling him the contents of the package. It has been held in numerous cases that where a railroad company accepts a trunk as baggage from a passenger, and the trunk contains articles of value not usual to be carried as baggage the railroad company is not liable for its loss as a common carrier unless it had knowledge of the contents of the trunk. (Humphrey v. Perry, 148 U. S., 627; Shackt v. Railroad, 94 Tenn., 658.) Nor is it incumbent upon the carrier to inquire as to the contents of the trunk at the time it is received to be transported. (Humphrey v. Perry, supra.)

The conclusion we reach is that even it be conceded that the general business of the defendant constituted it a common carrier, yet there is nothing in the record to show that it held itself out as a common carrier to receive and deliver money from its customers, and although it may be that it was a common carrier of usual packages and articles and messages and errands, there is no proof in the record that it was a common carrier of money or other valuables, and in the absence of proof to the contrary, the defend-

ant would not be presumed to be a common carrier of money and valuables under the facts as disclosed by this record.

The further question is made by appellee, that the record in this case does not show that it contained all the evidence heard at the trial. So far as shown by the record the only evidence offered by plaintiff was her own, and at the conclusion, it is stated: "Here plaintiff rests." So far as disclosed by the record the only evidence offered by the defendant was the witness Sloan, and at the conclusion of his evidence, which is in narrative form, as is also that of the plaintiff Bessie Howell, there is a statement to the effect that it was agreed by counsel for respective parties that if the messenger boy were present in court would say he had been robbed on the trip, and that his testimony to that effect may be considered as given. At the conclusion of this statement are the words: "Here defendant rested." There is no statement in the record that this is all the evidence heard at the trial. It is too well settled as a rule of practice in this State that, where there has been a general verdict or findings, the bill of exceptions must affirmatively show, or it must appear from the nature of the case, that all the evidence submitted to the jury or the court below material with reference to the questions to be raised in the reviewing court is stated in the bill, or the court will presume that there was evidence to authorize and sustain the verdict of the jury or the findings of the court, and the judgment thereon. (Insurance Co. v. Scales, 101 Tenn., 627; Kennedy v. Kennedy, 16 Lea, 736; Kirkpatrick v. Utley, 14 Lea, 96; Huffman v. Hughlett, 11 Lea, 549; and numerous other cases). As stated in Huffman v. Hughlett, supra; "The settled rule of this court undoubtedly is that where there is a general verdict by a jury and judgment thereon; or a similar finding by the court without a jury and judgment, if the bill of exceptions fails to show that it contains all the evidence, the court will presume that there was sufficient evidence to sustain the verdict." However, it has also been held in this State that where the record manifestly purports to include the whole case, the witnesses being introduced in regular order, and the testimony of each minutely set out, ending with these words: "Here the evidence closed," the court will regard the record as containing all the evidence. (Yates v. State, 10 Yerg., 594.) It has been held sufficient where the bill of exceptions sets out the evidence and concludes with the statement "This was all the material evidence in the cause," and that this would exclude the presumption that there was evidence to justify the verdict. In the case of Insurance Co. v. Scales, supra, it appeared that the bill of exceptions at the conclusion of the evidence contained in the record, closed with the words "Proof closed." It was held that that was not sufficient,

and was not equivalent to a statement that it was all the evidence heard or introduced at the trial of the case.

Although we have reviewed this case from the record before us, and even assuming that the words used, "Plaintiff rests" and "Defendant rests" were held to be sufficient to meet the requirements of the rule in Tennessee on the subject; still we are of the opinion that the defendant cannot be held liable under the facts as disclosed by this record, and under the law, for the loss of the money sued for by plaintiff, for the reasons hereinbefore set forth. But if we are mistaken as to this, we are of the opinion that the words used in the bill of exceptions, "Plaintiff rests," and "Defendant rests," are not the equivalent of a statement that it was all the proof or evidence heard or introduced at the trial, and for this reason the case must be affirmed.

Plaintiff will pay the cost of this appeal, and the cost of the cause.

Owen and Heiskell, JJ., concur.