IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 4, 2025 Session

## RETAIL DIRECT, LLC v. PAYANO EXPRESS, LLC ET AL.

**Appeal from the Chancery Court for Davidson County**
No. 23-0403-II    Anne C. Martin, Chancellor

———————————————————

**No. M2024-01896-COA-R3-CV**

———————————————————

An employee suffered severe injuries while working for a subcontractor and sought workers' compensation benefits from the logistics company that had retained the subcontractor. In response, the logistics company filed a declaratory judgment action asserting that it was exempt from liability as a "common carrier." The trial court granted summary judgment in favor of the logistics company, concluding that the company's federal operating authority established its common carrier status as a matter of law. The injured employee appeals, arguing that a genuine dispute of material fact exists regarding the logistics company's status because it exclusively served a single customer rather than the general public. We reverse the judgment of the trial court and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed;
Case Remanded**

JEFFREY USMAN, J., delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Taylor Pruitt and Catheryne Grant, Brentwood, Tennessee, for the appellant, Juan Francisco Rivera Vargas.

D. Andrew Saulters, Nashville, Tennessee, for the appellee, Retail Direct, LLC.[1]

**OPINION**

I.

———————————

[1] Defendants Payano Express, LLC; KMG Delivers, LLC; and Luis Caballero did not file briefs in this appeal.

This appeal arises from a dispute over whether a logistics company is exempt from workers' compensation liability as a "common carrier" under Tennessee Code Annotated section 50-6-106(1)(A). Plaintiff/Appellee Retail Direct is a logistics company that was in the business of transporting or arranging for the transportation, delivery, and installation of goods. The Appellant Juan Francisco Rivera Vargas (Mr. Rivera) alleges Retail Direct provides its services exclusively for Lowe's Home Centers (Lowe's). Indeed, the deposition testimony of Bridgette Matthews, the Vice President of Fleet and Compliance for Retail Direct, reveals that Retail Direct's only contract to provide delivery services at the time of the incident was with Lowe's. To carry out these deliveries, Retail Direct utilized multiple independent contractors, including Payano Express, LLC (Payano).

The business relationship between Retail Direct and Payano was governed by two contracts: an Interchange Agreement dated March 31, 2022, and a Services Agreement dated October 15, 2022. Both agreements explicitly outlined that Retail Direct and Payano were independent entities and that the contracts did "not create an employer/employee relationship for any purpose." Furthermore, the Services Agreement required Payano to maintain workers' compensation insurance at its own expense and indemnify Retail Direct against any claims arising out of the parties' relationship. It is undisputed that on the date of the accident, Payano was, however, uninsured for workers' compensation purposes.

On November 7, 2022, Intervenor/Appellant Mr. Rivera sustained severe injuries in the course of his employment with Payano. At the time of the accident, Mr. Rivera was riding as a passenger in a truck leased by Lowe's and provided to Retail Direct, which then interchanged the vehicle to Payano. The vehicle displayed Retail Direct's Department of Transportation (DOT) number. After suffering these injuries, Mr. Rivera filed a Petition for Benefit Determination in the Court of Workers' Compensation Claims wherein he petitioned for workers' compensation benefits against Payano, his direct employer, and against Retail Direct, alleging that Retail Direct was liable as a "statutory employer" pursuant to Tennessee Code Annotated section 50-6-113.

In response to Mr. Rivera's filing, Retail Direct filed a complaint against Payano in Davidson County Chancery Court, seeking, among other things, a declaratory judgment that Mr. Rivera was not an employee of Retail Direct at the time of the incident and that it had no liability to Mr. Rivera. Retail Direct asserted that the Federal Motor Carrier Safety Administration (FMCSA) authorized it to operate as a "common carrier" and that Payano operated under its DOT number, signifying that Payano was a leased-operator under the FMCSA regulations. Retail Direct argued that under Tennessee Code Annotated section 50-6-106(1)(A) it was therefore statutorily exempt from being deemed an employer of a leased-operator under Tennessee Code Annotated section 50-6-106(1)(A). This statutory provision provides, in part, "that no common carrier by motor vehicle operating pursuant to a certificate of public convenience and necessity shall be deemed the employer of a leased-operator or owner-operator of a motor vehicle or vehicles under a contract to such a common carrier." Tenn. Code Ann. § 50-6-106(1)(A).

Mr. Rivera sought and was granted permission to intervene in the action in Davidson County Chancery Court. In response to the proceedings in chancery, the Court of Workers' Compensation Claims stayed Mr. Rivera's workers' compensation action pending the outcome of the declaratory judgment action related to the contractual and statutory dispute.

After discovery, on August 19, 2024, Retail Direct filed a Motion for Summary Judgment on the grounds that it was a common carrier at the time of the incident, that Payano was a leased-operator or owner-operator, and that the contract between Retail Direct and Payano clearly stated that Payano's employees are not employees of Retail Direct. In opposition, Mr. Rivera argued there is a genuine dispute of material fact regarding whether Retail Direct actually operated as a common carrier. Mr. Rivera submitted a declaration from a transportation safety expert who opined that Retail Direct's business model, which he alleged exclusively served one customer, Lowe's, without publishing public tariffs or offering services to the general public, was that of a "contract carrier" rather than a "common carrier."

There was no evidence offered that Retail Direct contracted directly with members of the public. To the contrary, Retail Direct conceded that its commercial contract was exclusively with Lowe's and that it merely arranged for the delivery of products to Lowe's customers. In addition, Retail Direct conceded that it did not publish any rates or tariffs for the general public, though it argued to the trial court that this omission was legally immaterial to its statutory status as a common carrier. Retail Direct indicated that, with respect to the specific load being transported when Mr. Rivera was injured, it was acting "merely [as] a broker" that had tendered the delivery to Payano.

The chancery court initially denied Retail Direct's motion for summary judgment. The chancery court found that while it was undisputed that Retail Direct held an authorized FMCSA common carrier certificate, a factual dispute existed regarding the application of the common carrier exemption to Retail Direct's specific business practices. The chancery court specifically noted there was insufficient guidance "on how the term [common carrier] should be applied in a post-ICC/current-FMCSA regulatory context." The Interstate Commerce Commission (ICC) was the federal regulating authority when the applicable portion of Tennessee Code Annotated section 50-6-106 was enacted; however, the ICC was abolished in 1995. In 2000, the FMCSA was established and now regulates interstate carriers.

Retail Direct responded to the trial court's denial of its summary judgment motion by filing a Motion to Reconsider or Alternatively Permission for Interlocutory Appeal. In its Memorandum of Law in support of its motion, Retail Direct argued, "The Tennessee Legislature enacted [the] law in 1976 based on the definition of common carrier as it was in 1976 (as regulated by the Interstate Commerce Commission) specifically excluding leased-operators or owner-operators from consideration of being the statutory employees

of a 'common carrier.'" Retail Direct claimed that "the terminology of 'operating pursuant to a certificate of public convenience and necessity' is today's equivalent of having the necessary operating authority from the FMCSA."

The chancery court granted the motion to reconsider, and on November 20, 2024, the trial court issued a final order. The chancery court found that Retail Direct is a common carrier and accordingly granted Retail Direct's motion for summary judgment. The chancery court found that although "the term 'common carrier' is not defined in [Tennessee Code Annotated section 50-6-106], the legislature relied on certificates that were issued by the ICC at the time to demonstrate common carrier status." Determining the FMCSA performs a similar function in granting licenses, the trial court found "it appropriate to conclude that the FMCSA's grant of authority to motor carriers is today's equivalent." Because it was undisputed that Retail Direct was authorized as a common carrier by the FMCSA on the date of the accident, the chancery court concluded that the statutory requirement was fulfilled as a matter of law. The chancery court also determined that relying on the FMCSA's grant of authority was supported by case law in which parties had similar business models. Consequently, the chancery court concluded that the Tennessee Workers' Compensation Law was not applicable to Retail Direct, that the principal contractor theory of liability under section 50-6-113 was inapplicable, and that Retail Direct was not the employer of Mr. Rivera, statutorily or otherwise. Ultimately, the chancery court found that "the determination of Plaintiff's status as a common carrier is a question of law in light of the clear and unambiguous language of the statute and Plaintiff's authority pursuant to the FMCSA's designation as a common carrier."

Mr. Rivera appealed. He presents three primary issues for our review and sets forth his primary and sub-issues on appeal as follows:

A. Whether the Trial Court Incorrectly Interpreted the General Assembly's Use of the Term "Common Carrier" in Tennessee Code Annotated Section 50-6-106.

1. Whether the Plain Language of Tennessee Code Annotated Section 50-6-106(1)(A) Applies Only to "Common Carriers."

2. Whether a "Common Carrier" Means One Who Holds Themselves Out to the Public as Engaged in the Business of Transporting Persons or Property from Place to Place for the General Public In Exchange for Known Fares or Rates.

3. Whether Common Carriers are Distinct from Other Types of Carriers, Such as Contract Carriers.

4. Whether the Trial Court Erred by Interpreting the 1976 Amendment to Tennessee Code Annotated Section 50-6-106(1)(A) to Define "Common Carrier" as an Entity with FMCSA Operating Authority, Which is Contrary to the Plain Language of the Statute.

5. Whether the Trial Court Erred by Basing Common Carrier Status on FMCSA Operating Authority Instead of the Proper Legal Definition of "Common Carrier" Set Forth by Tennessee Law.

B. Whether the Trial Court Erred by Granting Summary Judgment to Retail Direct When (1) Retail Direct Failed to Meet its Burden of Production and (2) Mr. Rivera Demonstrated Genuine Disputes of Material Fact.

1. Whether Retail Direct Did Not Meet Its Burden of Production at the Summary Judgment Stage Because Retail Direct Failed to Prove It was Operating as a Common Carrier on the Date of Injury.

2. Whether there Exist Genuine Disputes of Material Fact Precluding Judgment as a Matter of Law.

C. Whether the Trial Court Exceeded its Subject Matter Jurisdiction by Ruling as to Retail Direct's Ultimate Liability [to] Mr. Rivera for Workers' Compensation Benefits.[2]

II.

The grant or denial of a motion for summary judgment is a matter of law that this court reviews "de novo, with no presumption of correctness" as to the trial court's findings. *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 887 (Tenn. 2019). "In reviewing a trial court's ruling on a motion for summary judgment, we make a fresh determination about whether the requirements of Rule 56 have been met." *Id.* (citing *Rye v. Women's Care Ctr. of Memphis*, 477 S.W.3d 235, 250 (Tenn. 2015)).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment bears the burden of proof at trial, that party's burden of production at the summary judgment stage is to produce evidence that, if uncontroverted at trial, would entitle it to a directed verdict. *TWB Architects, Inc.*, 578 S.W.3d at 888.

---

[2] Having concluded, for reasons addressed below, that the trial court erred in granting summary judgment to Retail Direct, we pretermit discussion of this issue.

If the moving party fails to meet this burden of production, "the burden does not shift to the nonmovant, and the court must dismiss the motion for summary judgment." *Shipley v. Williams*, 350 S.W.3d 527, 535 (Tenn. 2011). Conversely, if the moving party successfully meets its burden, the burden shifts to the nonmoving party to demonstrate that there is a genuine issue of material fact requiring a trial. *TWB Architects, Inc.*, 578 S.W.3d at 888. To defeat summary judgment, the nonmoving party need only demonstrate the existence of facts in the record which could lead a rational trier of fact to find in its favor, and the court must view the evidence in the light most favorable to the nonmoving party. *See id.* at 896.

Statutory interpretation in turn is a question of law, which is reviewed de novo with no presumption of correctness. *Jones by & through Sons v. Life Care Centers of Am.*, 715 S.W.3d 257, 264 (Tenn. 2025).

III.

Tennessee Code Annotated section 50-6-106 creates a number of exemptions from Tennessee's Workers' Compensation Law. With regard to common carriers, Tennessee Code Annotated section 50-6-106 provides that Tennessee's Workers' Compensation Law shall not apply to:

> Any common carrier doing an interstate business while engaged in interstate commerce, which common carrier and the interstate business are already regulated as to employer's liability or workers' compensation by act of congress, it being the purpose of this law to regulate all such business that the congress has not regulated in the exercise of its jurisdiction to regulate interstate commerce; provided, that this chapter shall apply to those employees of the common carriers with respect to whom a rule of liability is not provided by act of congress; provided, further, that no common carrier by motor vehicle operating pursuant to a certificate of public convenience and necessity shall be deemed the employer of a leased-operator or owner-operator of a motor vehicle or vehicles under a contract to such a common carrier. . . .

Tenn. Code Ann. § 50-6-106(1)(A).

The central question in this appeal is whether Retail Direct is a "common carrier" under the Tennessee Workers' Compensation Law. *See* Tenn. Code Ann. § 50-6-106(1)(A). The battleground is over the portion of Tennessee Code Annotated section 50-6-106(1)(A) that provides that "no common carrier by motor vehicle operating pursuant to a certificate of public convenience and necessity shall be deemed the 'employer' of a

leased-operator or owner-operator of a motor vehicle or vehicles under a contract to such a common carrier."

In endeavoring to interpret this provision, we note that the Tennessee Supreme Court has explained the task of statutory interpretation as follows:

> This Court's role in statutory interpretation is "to determine what a statute means." Specifically, we must decide "how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued." Original public meaning is discerned through consideration of the statutory text in light of "well-established canons of statutory construction."
>
> We give the words of a statute their "natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." In the absence of statutory definitions, we look to authoritative dictionaries published around the time of a statute's enactment.
>
> We consider the whole text of a statute and interpret each word "so that no part will be inoperative, superfluous, void or insignificant." We also consider "[t]he overall statutory framework." "[S]tatutes 'in pari materia'— those relating to the same subject or having a common purpose—are to be construed together . . . ."

*State v. Deberry*, 651 S.W.3d 918, 924-25 (Tenn. 2022) (citations omitted).

Retail Direct argues that because it held an active FMCSA motor common carrier certificate (MC-2244) and had a DOT number on the date of the accident, it was a common carrier as a matter of law. Retail Direct asserts this is the modern equivalent of the 1976 statutory language requiring a "certificate of public convenience and necessity" that is utilized in Tennessee Code Annotated section 50-6-106(1)(A). The chancery court, as noted above, agreed, concluding that because Retail Direct possessed such operating authority from the FMCSA on the date of the accident, it satisfied the statutory exemption as a matter of law.

For four reasons addressed in greater detail below, we cannot agree with the conclusion the chancery court reached. One, the chancery court's determination appears to run contrary to the plain language of the statute. Two, the chancery court's determination is inconsistent with a grammatical textual analysis of the critical participial phrase upon which Retail Direct relies. Three, the chancery court's determination is contrary to the common law understanding of the undefined statutory term "common carrier," which has deep common law roots. Four, the chancery court's reading of the statute is in tension with relevant persuasive authority of this court.

Under the plain language of the statute, the provision at issue places three distinct requirements upon an entity seeking the exemption: one, the entity must be a common carrier; two, the common carrying must be by motor vehicle; and three, it must be operating pursuant to a certificate of public convenience and necessity. *See* Tenn. Code Ann. § 50-6-106(1)(A). Assuming for purposes of argument that Retail Direct's federal paperwork constitutes a "certificate of public convenience and necessity," possessing this certificate does not, on its own, establish that Retail Direct is a common carrier. Instead, it merely satisfies one of the three requirements.

Retail Direct's argument and the chancery court's analysis treat one of these statutory requirements for qualifying for the statutory exemption under Tennessee Code Annotated section 50-6-106(1)(A) as the complete definition of the term. This reading, however, ignores that nature of the phrase upon which it relies. The phrase "operating pursuant to a certificate of public convenience and necessity" is a participial phrase that modifies "common carrier by motor vehicle." *See* Tenn. Code Ann. § 50-6-106(1)(A). Participial phrases function as adjectives and are distinct from gerund phrases, which function as nouns. Diana Hacker & Nancy Sommers, *The Bedford Handbook* 251-52 (12th ed. 2023); R.A. Close, *A Reference Grammar for Students of English* § 3.23 (1975) (distinguishing gerunds from participial phrases). In its role as a participial phrase, it is a modifier of a noun. Bryan A. Garner, *Garner's Modern English Usage* 1190, 1231 (5th ed. 2022) (defining "participial phrase" as "[a] phrase consisting of a participle and a modifier or complement and functioning as an adjective" and "adjective" as "[a] word typically used to modify a noun"); Martha Kolln, *Rhetorical Grammar: Grammatical Choices, Rhetorical Effects* 172, 180 (5th ed. 2007). Such phrases "add information about the noun headword." Kolln at 180. Thus, considered in context, the nature of the type of speech suggests that it functions as a restrictive modifier, delineating a subcategory of common carriers to which the statutory provision applies. In other words, the participial phrase indicates the common carriers to which the statute applies; it does not fully define a common carrier.

Additionally, Tennessee Code Annotated section 50-6-106(1)(A) does not expressly define "common carrier" for purposes of the statute, but the term "common carrier" itself has deep common law roots. *See*, *e.g.*, Adam Candeub, *Common Carrier Law in the 21st Century*, 90 Tenn. L. Rev. 813, 820, 822 (2023) (noting the special legal status and responsibilities of common carriers in English law traces back for centuries with roots in Medieval England); Adam Candeub, *Network Interconnection and Takings*, 54 Syracuse L. Rev. 369, 381 (2004) ("The law has used the term 'common carrier' since the Middle Ages."); William A. Mogel & John P. Gregg, *Appropriateness of Imposing Common Carrier Status on Interstate Natural Gas Pipelines*, 4 Energy L.J. 155, 163 (1983) ("The common carrier doctrine developed under English common law during the Middle Ages."); *see also*, *e.g.*, *CSI Aviation Servs., Inc. v. U.S. Dep't of Transp.*, 637 F.3d 408, 415 (D.C. Cir. 2011) (observing that "'[c]ommon carrier' is a well-known term that comes to us from the common law."). In seeking to understand the meaning of the term "common carrier,"

we turn to the common law understanding thereof. *See Lawson v. Hawkins Cnty.*, 661 S.W.3d 54, 59 (Tenn. 2023) ("When a statute uses a common-law term without defining it, we assume the enacting legislature adopted the term's common-law meaning 'unless a different sense is apparent from the context, or from the general purpose of the statute.'").

At the epicenter of the common law understanding of a common carrier – and the distinction between a common carrier and a contract carrier – is that a common carrier offers its services to the public. *See, e.g.*, 13 C.J.S. Carriers § 2 ("A 'common carrier' is one who holds him or herself out to the public as engaged in the business of transportation of persons or property from place to place for compensation or hire, offering his or her services to the public generally, without making individualized decisions, in particular cases, whether and on what terms to deal." (Footnotes omitted)); Ga. Automobile Insurance Law § 44:3 (2025-2026 ed.) ("The distinction between motor common carriers and motor contract carriers is that motor contract carriers do not offer to carry goods for the general public. Motor contract carriers usually transport goods or passengers for certain customers under an exclusive contract arrangement."); Ky. L. of Damages § 16:1 ("The difference between common and contract carriers is based upon their mode of operation. Cases recognize that common carriers hold themselves out to the general public as ready to transport goods for all."); 4 Md. L. Encyclopedia Carriers § 1 ("[C]arriers may be classified as 'contract' or 'common' carriers, and may be distinguished in that a common carrier must serve on an equal basis all of the general public who seek its services and may not set aside part of its equipment for particular customers to the exclusion of others, whereas a contract carrier may devote equipment to the exclusive needs of one shipper, may guarantee a rate for a fixed period of time, and may offer special services."); *see also, e.g., United States v. Contract Steel Carriers*, 350 U.S. 409, 410 n. 1 (1956) ("A common carrier is one 'which holds itself out to the general public to engage in the transportation by motor vehicle . . . of passengers or property.' A contract carrier is any 'person which, under individual contracts or agreements, engages in' such transportation."); *Holland Motor Express, Inc. v. Illinois Com. Comm'n*, 520 N.E.2d 682, 689 (1987) ("The distinction between a common carrier and a contract carrier is that a common carrier must hold itself out to provide service to the general public, while a contract carrier provides service only under written bilateral contracts."); *State ex rel. Utilities Comm'n v. Gulf-Atl. Towing Corp.*, 110 S.E.2d 886, 889 (N.C. 1959) ("The definition of a common carrier at common law seems to be clearly settled. A common carrier is one who holds himself out to the public as engaged in the public business of transporting persons or property for others for compensation from place to place, offering his services to such of the public generally as choose to employ him and pay his charges. . . . The private carrier of goods does not hold himself out to the public as ready to accept and carry all goods of all who offer.").

Longstanding Tennessee law is in accord with such an understanding. A common carrier is "one who undertakes for hire, to transport the goods of such as choose to employ him, from place to place." *Howell v. Sloan Messenger Co.*, 5 Tenn. App. 312, 316 (1927). The distinctive characteristic of a common carrier is that "his conduct must amount to a

public offer to carry for all who tender him such goods as he is accustomed to carry." *Id*. (citation omitted). The dominant and controlling factor in this analysis is the company's "public profession or holding out, by words or by a course of conduct." *Brown v. Allright Auto Parks, Inc.*, 456 S.W.2d 660, 665 (Tenn. Ct. App. 1970) (quoting 13 Am. Jur. 2d Carriers § 2 560-61). As noted by the Tennessee Supreme Court,

> A common carrier is one who, by virtue of his calling undertakes for compensation to transport personal property from one place to another for all such as may choose to employ him; and everyone who undertakes to carry for compensation the goods of all people indifferently, is as to liability, to be deemed a common carrier.

*Fed. Exp. Corp. v. Tennessee State Bd. of Equalization*, 717 S.W.2d 873, 875 (Tenn. 1986). This longstanding common law meaning of the term "common carrier" conflicts with Retail Direct's reading of the statutory provision.

Furthermore, the present case is not the first time the Tennessee Court of Appeals has considered an argument in the vein of that advanced by Retail Direct; this court previously rejected this understanding. In *Nichols v. TransCor Am., Inc.*, No. M2001-01889-COA-R9-CV, 2002 WL 1364059 (Tenn. Ct. App. June 25, 2002), this court, in the context of tort litigation addressing whether a corporation engaged in transportation of prisoners was a common carrier and whether its duties of care could be delegated, considered an argument akin to that presented in this case. Therein, the corporation providing transportation for prisoners had an Interstate Commerce Commission Certificate, which stated, "This certificate is evidence of the carrier's authority to engage in transportation as a common carrier by motor vehicle." *Id*. at *2. Addressing whether having such a certificate necessarily made the transportation corporation a common carrier under Tennessee law, this court concluded that it did not. *Id*. at *2-4.

Explaining its reasoning, the *Nichols* Court stated the following:

> A common carrier of passengers has been defined as "one who undertakes for hire to carry all passengers indifferently who may apply for passage." While common carriers may include operators of many different types of transportation, the distinguishing characteristic of a common carrier is not the mode of transportation employed, but the nature of its relationship to the general public.
>
> A common carrier is bound to transport anyone who requests its services. It does not have the right to refuse passengers who offer the proper fare, so long as it possesses the capacity to carry them. . . .

The plaintiff argues that her introduction into the record of certain documents and materials have created a material issue of fact as to whether TransCor is a common carrier, and that the issue should therefore be decided by a jury. The record contains TransCor's Interstate Commerce Commission Certificate, as well as certificates issued by the states of Tennessee and Texas. It appears to us, however, that those certificates were issued for purposes of regulation and/or taxation, and that they do not supercede the analysis under tort law by which common carriers are distinguished from private or contract carriers. Further, the fact that the I.C.C. may have authorized TransCor to operate as a common carrier does not mean that the company has actually operated as one.

Appellant also directs our attention to promotional materials prepared by TransCor's marketing department, which tout the company's size, its facilities, and its expertise. The record indicates that TransCor operates in all 50 states, and that it transports between 40,000 and 70,000 prisoners each year. One brochure boasts that it transports all types of prisoners, "including male, female, high risk, those with medical conditions, juveniles, and short notices/deadlines" and shows its phone number in bold type with the slogan "One call does it all." In one document submitted to the Missouri Department of Correction, TransCor stated, "The contractor represents himself or herself to be an independent contractor offering such services to the general public."

Notwithstanding this document, there is no evidence in the record that TransCor has actually offered to transport any passengers other than prisoners. Further, there is no evidence sufficient to overcome the proof of TransCor's actual mode of operation, both in general and in the specific incident that gave rise to the present case. TransCor does not provide transportation to the general public, nor is it obligated to carry anyone, except by specific contract.

*Nichols v. TransCor Am*., *Inc*., No. M2001-01889-COA-R9CV, 2002 WL 1364059, at *3-4 (Tenn. Ct. App. June 25, 2002) (citations and footnotes omitted).

The distinction recognized in *Nichols* between administrative licensure and actual operation reflects the fundamental differences between the federal regulatory application process and Tennessee's substantive legal definition of a common carrier. The regulatory framework governing the FMCSA registration process is an administrative, self-selected classification rather than a substantive federal adjudication of an entity's common-law status. To obtain a USDOT number and operating authority, an applicant submits a Motor Carrier Identification Report, known as Form MCS-150. *See* Fed. Motor Carrier Safety Admin., Motor Carrier Identification Report (Application for USDOT Number), Form MCS-150 (hereinafter Form MCS-150), *available at*

- 11 -

https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/2026-02/MCS-150%20Form.pdf.
The FMCSA instructions explicitly state that the "registration process requires that companies define the type of business operation . . . that they *plan* to establish." *Id.* at i (emphasis added). The agency "strongly encourages applicants to use the electronic online application process since it has built-in edit checks and simple yes-and-no questions" and estimates that the "time to complete the form online is approximately 20 minutes." *Id.* Nothing in the record suggests that the FMCSA conducts any verification process prior to granting the requested operating authority.

In other words, under the federal framework, obtaining a United States Department of Transportation number and FMCSA operating authority is an administrative application and taxation process. Securing this federal designation relies on self-reporting and requesting a specific type of operating authority based on an anticipated business model. It does not appear that there is a substantive verification or audit process to ensure that the actual operations conform to the category selected.

Retail Direct contends, nevertheless, that this Court should not consider the *Nichols* decision because Mr. Rivera failed to raise or argue this case before the trial court. It is a well-settled principle of Tennessee appellate practice that issues raised for the first time on appeal are waived. *See In re M.L.P.*, 281 S.W.3d 387, 394 (Tenn. 2009); *Dye v. Witco Corp.*, 216 S.W.3d 317, 321 (Tenn. 2007). However, the record plainly demonstrates that the Appellant properly preserved this issue below. The record demonstrates that the *Nichols* opinion was actually submitted in its entirety in the trial court, and the application of its reasoning was explicitly argued before the Chancellor. Furthermore, it is issues, not cases, which are preserved on appeal. *See Fahey v. Eldridge*, 46 S.W.3d 138, 143 (Tenn. 2001) (noting a "precise citation to a rule, statute, or case as the legal ground for the alleged error is normally not required to preserve the issue for appeal under Rule 3(e)."); *see also Galison v. Brownell*, No. W2023-00526-COA-R3-CV, 2024 WL 3718640, at *3 (Tenn. Ct. App. Aug. 8, 2024). Retail Direct's waiver argument is without merit.

Retail Direct also argues that *Nichols* is inapplicable to the present case because it is a tort case dealing with passenger transport, rather than a workers' compensation case involving the transport of goods. We agree with Retail Direct that the context is not identical. After all, we are interpreting Tennessee Code Annotated section 50-6-106(1)(A) in this case, rather than applying Tennessee tort law. However, in a case where we are considering the common law understanding of what constitutes a common carrier and whether possession of a federal certificate is dispositive of common carrier status under Tennessee law, *Nichols* is an appropriate persuasive authority to consider.

In summary, the plain language of Tennessee Code Annotated section 50-6-106(1)(A), the role of participial phrases as a part of speech, the common law understanding of the term "common carrier," and this court's prior precedent all stand in opposition to Retail Direct's interpretation of the contested statutory language. Retail

Direct, however, insists that its understanding of a common carrier is required by precedent of the Tennessee Supreme Court. Retail Direct relies upon three Tennessee Supreme Court decisions in support of its contention: *Honsa v. Tombigbee Transp. Corp.*, 141 S.W.3d 540 (Tenn. 2004), *Joslin v. Mich. Mut. Ins. Co.*, 742 S.W.2d 263 (Tenn. 1987), and *Long v. Stateline Sys., Inc.*, 738 S.W.2d 622 (Tenn. 1985). Retail Direct contends these precedents establish that possessing federal motor carrier authority mandates application of the statutory exemption from Tennessee's Workers' Compensation Law.

Retail Direct's reliance is misplaced. In *Honsa v. Tombigbee Transp. Corp.*, the Tennessee Supreme Court indicated that it did not have before it the question of whether Honsa was a common carrier, which was undisputed in that case, but instead whether "the plaintiffs were 'leased-operator[s] . . . of a motor vehicle or vehicles under a contract to' Tombigbee." *Honsa*, 141 S.W.3d at 542. Similarly, in *Joslin*, the Tennessee Supreme Court indicated that in considering the issue presented in that case that it was undisputed that "that Alltrans was a common carrier operating under a certificate of public convenience and necessity at this time." *Joslin*, 742 S.W.2d at 265. In *Long*, the Tennessee Supreme Court similarly expressly stated that "[t]he only issue" before it was "whether T.C.A. section 50-6-106(1) exempts a common carrier operating under a certificate of public convenience and necessity issued by the Interstate Commerce Commission from being deemed an 'employer' under the Worker's Compensation Act *under circumstances when the deceased driver was operating a truck pursuant to a lease agreement which provided that the owner-operator was to supply a vehicle and driver to the common carrier*." *Long*, 738 S.W.2d at 623 (emphasis added).

The Tennessee Supreme Court did not consider in any of these cases the question of whether the transportation corporation constituted a common carrier. In each of these cases, the principal contractor's status as a common carrier was undisputed, conceded, or established before the trial court in such manner that it was not before the Tennessee Supreme Court on appeal.

The Tennessee Supreme Court has long indicated that "[i]t is a familiar principle that stare decisis only applies with reference to decisions directly upon the point in controversy." *State v. Nashville Baseball Club*, 154 S.W. 1151, 1155 (Tenn. 1913); *see also*, *e.g.*, *Union Tr. Co. v. Williamson Cnty. Bd. of Zoning Appeals*, 500 S.W.2d 608, 614 (Tenn. 1973) (addressing stare decisis under Tennessee law and indicating that "for that doctrine to apply it is necessary that the issues or points in controversy be identical"). Accordingly, "[a] question which merely lurks in the record, neither brought to the attention of the Court nor ruled upon, is not to be considered as having been so decided as to constitute a precedent." *State ex rel. Harbin v. Dunn*, 282 S.W.2d 203, 212 (Tenn. Ct. App. 1943); *see also*, *e.g.*, *Armitage v. Kasulis*, No. E2024-01906-COA-R3-CV, 2025 WL 3765875, at *13 (Tenn. Ct. App. Dec. 29, 2025). Because the Tennessee Supreme Court did not assess the common carrier status of these entities, these decisions provide no basis for concluding the Tennessee Supreme Court has determined that the existence of a

certificate in and of itself renders the carrier a common carrier under Tennessee Code Annotated section 50-6-106(1)(A).

IV.

Because the federal certificate does not *ipso facto* confer common carrier status to Retail Direct for purpose of Tennessee's Workers Compensation Law, the company must show that in its day-to-day operations it actually functioned as a common carrier. Retail Direct attempts to meet its summary judgment burden by observing that it owned box trucks and delivered to public customers. However, Retail Direct admitted that it exclusively fulfilled a dedicated logistics contract for Lowe's, a single corporate client. Additionally, Retail Direct conceded as an undisputed fact that it "did not publish any rates or tariffs for reference by the general public." The test for a common carrier requires an inquiry into whether the company offers its transportation services for hire to the public, not whether its operations involve interaction with the public. Retail Direct provides no authority to the contrary. Accordingly, Retail Direct failed to establish that it is entitled to judgment as a matter of law as a common carrier under Tennessee Code Annotated section 50-6-106(1)(A). Therefore, we reverse the trial court's grant of summary judgment.

V.

For the aforementioned reasons, we reverse the judgment of the Chancery Court for Davidson County. Costs of this appeal are taxed to the appellee, Retail Direct, LLC, for which execution may issue if necessary. The case is remanded for such further proceedings as may be necessary and consistent with this opinion.


  s/ Jeffrey Usman
JEFFREY USMAN, JUDGE